879 F.2d 945
 28 Fed. R. Evid. Serv. 705
 UNITED STATES of America, Appellee,
v.
Winston MACHOR, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Armand Allen STEVENSON, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Valeriano BRITO-MEJIA, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Gumersindo Eduardo CARRASCO, Defendant, Appellant.
 Nos. 87-1603 to 87-1606.
 United States Court of Appeals,
First Circuit.
 Heard Dec. 8, 1988.
Decided June 29, 1989.
Rehearing and Rehearing En Banc in No. 87-1606 Denied Aug. 1, 1989.
 
 Francis K. Morris, by Appointment of the Court, with whom Morris & Collins, Framingham, Mass., was on brief, for defendant, appellant Gumersindo Eduardo Carrasco.
 Benjamin S. Waxman with whom Frederick S. Robbins and Weiner, Robbins, Tunkey & Ross, P.A., Miami, Fla., were on brief, for defendant, appellant Armand Allen Stevenson.
 Seth M. Kalberg, Jr., Boston, Mass., by Appointment of the Court, for defendant, appellant Valeriano Brito-Mejia.
 Marshall T. Cary, Bangor, Me., by Appointment of the Court, for defendant, appellant Winston Machor.
 Luis A. Plaza, Asst. U.S. Atty., with whom Daniel F. Lopez-Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.
 Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.
 TORRUELLA, Circuit Judge.
 
 
 1
 After a joint jury trial, the four appellants, Valeriano Brito-Mejia ("Brito"), Gumersindo Carrasco ("Carrasco"), Winston Machor ("Machor") and Armand Allen Stevenson ("Allen") were convicted under 21 U.S.C. Sec. 841(a)(1) for aiding and abetting each other in the possession with intent to distribute cocaine. Each appellant alleges the commission of several errors by the district court. We find that no reversible error was committed and affirm the four convictions.
 
 
 2
 The facts which the jury could have found are as follows. At the time of the relevant facts, Mario Castillo ("Castillo") was employed as a cabin steward on board the vessel VICTORIA and worked as an informant for the United States Customs Service. Carrasco, who also worked on the VICTORIA, had known Castillo for approximately eight months to a year. On November 16, 1986, Carrasco told Castillo that he was looking for someone to buy a kilogram of cocaine that Carrasco had "in the company of Mr. Brito" and "two Costa Ricans" who were to arrive in San Juan in the vessel SONG OF AMERICA. (Machor and Allen are in fact Costa Rican nationals and did arrive afterwards on the ship SONG OF AMERICA). Castillo informed Customs about Carrasco's offer. Castillo was directed to arrange a meeting between Carrasco and agent Rivera, who would pose as a prospective buyer. This meeting took place several days later at the Don Ricardo Restaurant in Old San Juan. Agent Rivera and Carrasco agreed to the sale of one kilogram of cocaine for $30,000. Carrasco told the agent that the cocaine would arrive "in the company of two Costa Ricans" who were arriving in the ship SONG OF AMERICA and that, as soon as the cocaine arrived, he would contact Rivera through informant Castillo. Carrasco also mentioned that Brito was "the one in charge."
 
 
 3
 The next day Carrasco phoned Castillo to inform him that the cocaine had arrived. Carrasco, accompanied by Allen, picked up Castillo. Castillo then asked Carrasco to stop the car so that he could phone the buyer and tell him that the cocaine had arrived. Castillo called Customs and arranged for a second meeting later that day at the Don Ricardo Restaurant. Castillo went back into the car where Allen showed him a blue and white bag containing cocaine. Then they picked up Brito and Machor and proceeded on to the Don Ricardo Restaurant.
 
 
 4
 Carrasco dropped off Castillo, Allen, Machor and Brito at the restaurant and went to park the car. While Allen, Machor and Brito remained inside the restaurant, informant Castillo and agent Rivera met outside. Castillo brought out Brito and introduced him to the prospective buyer, agent Rivera. Brito said that the "Costa Ricans" had the kilogram of cocaine inside the restaurant. Rivera asked how much cocaine they could supply in the future and Brito replied they could get two kilograms each time the ship arrived in San Juan. Afterwards Brito went inside the restaurant and came out with Machor. Machor agreed to show Rivera the cocaine. Machor again went inside the restaurant and later came out with Allen. Allen placed himself next to a parked car and started to look in both directions. Machor was carrying a white plastic bag with blue designs. Machor and Rivera walked towards a store near the restaurant where Machor opened the bag and showed Rivera the cocaine. After Rivera saw the "merchandise" he approached Allen, shook his hand, and told him "this is fine." Allen replied: "everything is fine, fine, fine." Thereafter Rivera gave a pre-arranged signal to surveillance agents who proceeded to arrest Machor, Allen and Brito. The cocaine was found on a chair in the restaurant, where it apparently had been returned before the arrests. Carrasco was arrested later in his car at Pier Six, some distance from the restaurant.
 
 
 5
 After the trial, the four codefendants were found guilty on Count One of the indictment: aiding and abetting in the possession of cocaine with intent to distribute it. We will now address the arguments advanced by appellants.
 
 I. Sufficiency of the Evidence
 
 6
 Defendants contend that the evidence presented at trial against them was insufficient to sustain their conviction. In considering the sufficiency of the evidence in criminal cases, the proper standard of review is whether, viewing the evidence in the light most favorable to the government and without assessing the credibility of the witnesses, a rational fact finder could have adjudged the defendant guilty beyond a reasonable doubt. See United States v. Serrano, 870 F.2d 1, 5 (1st Cir.1989) and cases therein cited. The elements of the crime charged do not have to be proven with direct evidence; the government can use circumstantial evidence as long as the evidence, viewed as a whole, is sufficient to warrant a reasonable jury to conclude that the defendant is guilty beyond a reasonable doubt. United States v. Campa, 679 F.2d 1006, 1010 (1st Cir.1982).
 
 
 7
 An essential element that the government was required to prove in this case was that the defendants "aided and abetted" in the possession with intent to distribute the controlled substance. Thus, the government had to show that each defendant "associated himself with the venture, that he participated in it as something he wished to bring about, that he sought by his action to make it succeed." Id., (quoting United States v. Martinez, 479 F.2d 824, 829 (1st Cir.1973)).
 
 
 8
 In evaluating the evidence presented against defendants in the light most favorable to the government we are compelled to conclude that it was more than sufficient. From the very first meeting between the informant and Carrasco, the latter identified Brito and "two Costa Ricans" as the persons interested in selling cocaine. At the first meeting with agent Rivera, Carrasco again mentioned two Costa Ricans who were to arrive in the ship SONG OF AMERICA as the persons who were bringing the cocaine. As it turned out, Machor and Allen are Costa Rican nationals and did arrive in the ship SONG OF AMERICA. Carrasco also mentioned that Brito was "the one in charge." On the day of the arrests, Carrasco picked up the other codefendants, including Brito and Machor for the purpose of attending the pre-arranged meeting with the purported buyer of the cocaine, agent Rivera. At that time, Allen had possession of the cocaine. At the restaurant Brito specifically stated the Costa Ricans had the cocaine inside the restaurant. He even arranged for future cocaine sales. Later on Brito came out of the restaurant with Machor who showed agent Rivera the cocaine. These facts obviously amounted to more than "a mere presence at the scene and knowledge that a crime is being committed," United States v. Tarr, 589 F.2d 55, 59 (1st Cir.1978), as defendants contend. On the contrary, the facts show that defendants shared the criminal intent necessary to be convicted for aiding and abetting.
 
 
 9
 Defendants also challenge the sufficiency of the evidence on the grounds that the cocaine was found on a chair inside the restaurant. We reject this argument. The fact that the cocaine was not found in the possession of one of the codefendants is not dispositive. The jury was reasonable in inferring the commission of the crime beyond a reasonable doubt based on the totality of the evidence introduced.
 
 II. The Admission of Alleged Hearsay
 
 10
 Machor and Allen object to the admission of statements of other co-defendants introduced through the testimony of government witnesses. They question the admissibility of the statements on two interrelated grounds. First, they argue that the lack of a formal Petrozziello finding amounted to a reversible procedural error. See United States v. Petrozziello, 548 F.2d 20 (1st Cir.1977). Second, they contend that the statements were inadmissible because they were not within the coconspirators' statements exception to the hearsay rule. Fed.R.Evid. 801(d)(2)(E).
 
 
 11
 In order to determine whether the lack of a formal Petrozziello finding constitutes reversible error we shall review the relevant facts. During the course of the trial the informant Castillo testified that defendant Carrasco had stated that he had a kilogram of cocaine "in the company" of Brito and "two Costa Ricans." The defense did not object to this testimony. Castillo also testified that at the initial meeting at the restaurant Carrasco had told agent Rivera that he had the cocaine "in the company of the Costa Ricans and Mr. Brito." At this point, defense counsel objected on hearsay grounds. After a brief bench conference, the court conditionally admitted the statements "subject to tie up" under Fed.R.Evid. 801(d)(2)(E), as to coconspirators' statements. See Petrozziello, supra; United States v. Ciampaglia, 628 F.2d 632 (1st Cir.), cert. denied, 449 U.S. 956, 1038, 101 S.Ct. 365, 618, 66 L.Ed.2d 221, 501 (1980).
 
 
 12
 Later during the trial, agent Rivera also testified as to the initial meeting at the restaurant. When he stated that Carrasco had said that Brito and some Costa Ricans had the cocaine for sale, defense counsel objected on hearsay grounds. Citing Petrozziello, the court overruled the objection.
 
 
 13
 Although he had the opportunity to do so, at no point during the course of the trial did defense counsel request a formal Petrozziello determination. It is for the first time on appeal that appellants argue the court should have made a formal Petrozziello finding.
 
 
 14
 In Petrozziello, we had for the first time the opportunity to interpret the impact of the newly promulgated Federal Rules of Evidence on the admissibility of coconspirators' statements. In particular, we held that, contrary to previous practice, the admissibility of such statements would be determined by the judge pursuant to Fed.R.Evid. 104(a). In making this determination, the judge should consider the admissibility of such statements using a preponderance of the evidence test. Petrozziello at 23. See Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). The procedure to be employed by the judge was further explained in Ciampaglia, supra, partially following the Eighth Circuit Rule. Under Ciampaglia, if the government attempts to introduce a statement under Fed.R.Evid. 801(d)(2)(E), the Court, upon proper objection, may, if it so chooses,[1] admit the declaration subject to it being "connected up." At that time the court should inform the parties out of the hearing of the jury that:
 
 
 15
 (a) the prosecution will be required to prove by a preponderance of the evidence that a conspiracy existed, that the declarant and defendant were members of it at the time that the declaration was made, and that the declaration was in furtherance of the conspiracy, (b) that at the close of all the evidence the court will make a final Petrozziello determination for the record, out of the hearing of the jury; and, (c) that if the determination is against admitting the declaration, the court will give a cautionary instruction to the jury, or, upon an appropriate motion, declare a mistrial if the instruction will not suffice to cure any prejudice.
 
 
 16
 Ciampaglia, 628 F.2d at 638.
 
 
 17
 Without a proper objection to the statements introduced by the government, the court is not required to follow the Ciampaglia procedure or make a Petrozziello finding. United States v. Lopez, 709 F.2d 742, 745 (1st Cir.), cert. denied, 464 U.S. 861, 104 S.Ct. 187, 78 L.Ed.2d 166 (1983); Campa, supra, at 1011. Even when defense counsel makes a proper objection to the statements, errors in the timing of the Petrozziello determination or in the standard employed in making that determination, unaccompanied by proper objections, will be reversed on appeal only upon a showing of plain error. United States v. David E. Thompson, Inc., 621 F.2d 1147, 1153 (1st Cir.1980); United States v. Pappas, 611 F.2d 399, 405 (1st Cir.1979); Ciampaglia, supra.
 
 
 18
 In the case at bar, however, defense counsel properly objected to the admissibility of at least some of the coconspirators' statements. Nevertheless, counsel did not request a final Petrozziello determination.
 
 
 19
 At least one court has held that as long as the defense properly objects to the admissibility of the statements, the lack of a Petrozziello-type finding amounts to a reversible error. United States v. Radeker, 664 F.2d 242 (10th Cir.1981). Thus, according to this rule, it is the government's responsibility to request such final determination. United States v. Monaco, 700 F.2d 577 (10th Cir.1983). We reject this mechanical approach.
 
 
 20
 On the other end of the spectrum are cases holding that the lack of an appropriate motion requesting a Petrozziello-type determination limits appellate review of the admissibility of the extrajudicial statements only upon a showing of plain error. United States v. Miller, 799 F.2d 985, 990 (5th Cir.1986); United States v. DeRoche, 726 F.2d 1025, 1028 (5th Cir.1984). But see United States v. Manzella, 782 F.2d 533 (5th Cir.), cert. denied, 476 U.S. 1123, 106 S.Ct. 1991, 90 L.Ed.2d 672 (1986); United States v. Winship, 724 F.2d 1116 (5th Cir.1984). Thus under this rule it is incumbent on trial counsel to request a formal ruling.
 
 
 21
 The proper standard, however, seems to lie between these two postures. On the one hand we have stressed the importance of making a formal Petrozziello finding. See Ciampaglia, at 638 n. 3. This ensures that the court addresses the policy concerns inherent in considering the admissibility of extrajudicial statements. See Bourjaily, supra 483 U.S. at 176, 107 S.Ct. at 2779. On the other hand, an "automatic reversal" rule would encourage litigants, in some cases where the evidence supports the admissibility of the extra-judicial statements, to strategically omit a specific Petrozziello request in order to get an "automatic" reversal. Thus, the responsibility to see that a Petrozziello determination is made should fall on both the government and the defense. In cases, such as this one, where a proper hearsay objection was made and a Petrozziello determination was neither requested by the parties nor made by the trial court, there will be no reversible error if an examination of the record reveals that the trial court acknowledged that a Fed.R.Evid. 801(d)(2)(E) problem existed and considered the issue, see Manzella and Winship, supra, provided, of course, that the government has met its burden of proof under Petrozziello. If the appeals court cannot determine whether the preponderance standard has been met, or feels that the trial court did not properly consider the issue, it may also remand to the trial court with instructions to make a Petrozziello determination. See United States v. Holloway, 731 F.2d 378 (6th Cir.1984). This approach will ensure that the policies inherent in making a Petrozziello determination are considered and that judicial resources are conserved.
 
 
 22
 The record in this case reveals that the trial court acknowledged that the statements raised a Petrozziello issue and that it considered the issue. As soon as the defense objected to the statements on hearsay grounds, the court conducted a brief conference with the attorneys out of the hearing of the jury and determined to conditionally admit the statements under Fed.R.Evid. 801(d)(2)(E) "subject to tie up." Later during the trial, the defense again objected on hearsay grounds and the court overruled the objection citing Petrozziello. At the close of both the government's and the defense's case, motions for acquittal were denied by the court. These facts show that the court did consider the Petrozziello issue.
 
 
 23
 The record also reveals that the government met its burden of proving, by a preponderance of the evidence, "that a conspiracy existed at the time the statement[s] [were] made and that the statement[s] [were] made in the furtherance of the conspiracy." United States v. Pelletier, 845 F.2d 1126, 1128 (1st Cir.1988); Fed.R.Evid. 801(d)(2)(E); Petrozziello, supra. Such evidence was provided by the testimony of Castillo and agent Rivera. Castillo testified inter alia that on November 16, 1986 Carrasco said that he was looking for a buyer of a kilogram of cocaine that he had "in the company of Mr. Brito" and "two Costa Ricans" who were to arrive in the ship SONG OF AMERICA. It is undisputed that Machor and Allen are in fact Costa Rican nationals and did arrive on said ship. Castillo testified further that a meeting was arranged with agent Rivera posing as a buyer. He stated that at that meeting Carrasco again said that he wanted to sell the cocaine that was to arrive in the vessel SONG OF AMERICA "in the company of two Costa Ricans." Castillo's testimony about this meeting was corroborated by the testimony of agent Rivera. Castillo also testified that on the day of the proposed cocaine sale, he accompanied the four defendants, including Machor and Allen, to the restaurant where the sale was supposed to take place. Agent Rivera testified, inter alia, that when he arrived at the restaurant, he was introduced to Brito who explained that the Costa Ricans inside the restaurant had the cocaine. He said that Brito went into the restaurant and then came out with Machor who stated that he could not hand over the cocaine without first receiving the agreed purchase price. Rivera continued that Machor went inside the restaurant again and came out with the bag of cocaine. This time he was accompanied by Allen. This evidence shows, by at the very least a preponderance standard, that a conspiracy to sell cocaine existed at the time the statements against Machor and Allen were made, and that they were made in the furtherance of the conspiracy. The error alleged by Machor and Allen was not committed.
 
 III. Effectiveness of Representation
 
 24
 Carrasco argues that his right to effective assistance of counsel was violated by the court's denial of his motion to remove his appointed counsel.
 
 
 25
 The record shows that at the commencement of the trial Carrasco made an oral motion to address the court. Hence a hearing was held in chambers. Carrasco informed the court that he was not satisfied with his appointed attorney and that he desired substitute counsel. His dissatisfaction generally stemmed from disagreements in two areas. The first is related to a communication problem. Carrasco complained about the orientation, or lack thereof, that counsel had offered him. He said that counsel had told him that "justice does not exist" and that "even if [Carrasco] were to tell the truth ... that once they accused [him] they are the ones that are going to be believed." Tr. Vol. VI p. 5. The second area of disagreement arose from an alleged attempt by counsel to have Carrasco's uncle testify to "something which goes against the truth, something that goes against what [Carrasco] had stated to [counsel]." The judge questioned Carrasco and his attorney about the disagreements. Carrasco's attorney explained that he was trying to tell his client that in his opinion his chances were slim. The court obviously gave credence to the attorney, concluding that Carrasco dissatisfaction with his appointed attorney stemmed from Carrasco's misunderstanding as to how the system works. The court determined that appointed counsel was an honest, competent and upright attorney and that he would do his best to defend Carrasco.
 
 
 26
 The right to effective assistance of counsel is a fundamental component of the Sixth Amendment. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). However, the right to choose counsel is not absolute; it must be weighed against the need for an efficient and effective administration of justice. Tuitt v. Fair, 822 F.2d 166 (1st Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987); Maynard v. Meachum, 545 F.2d 273 (1st Cir.1976). Although an accused who is represented by an appointed attorney has a right to effective counsel, he does not have the right to choose a particular counsel at any cost in terms of delay. United States v. Mastroianni, 749 F.2d 900, 914 (1st Cir.1984). A denial of a motion for substitution of counsel will be reversed only upon abuse of discretion. United States v. Poulack, 556 F.2d 83 (1st Cir.), cert. denied, 434 U.S. 986, 98 S.Ct. 613, 54 L.Ed.2d 480 (1977). In making this determination, "the appellate court should consider several factors, including the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense." United States v. Allen, 789 F.2d 90, 92 (1st Cir.), cert. denied, 479 U.S. 846, 107 S.Ct. 164, 93 L.Ed.2d 103 (1986). In gauging these factors, one should bear in mind that the right to counsel does not involve the right to a "meaningful relationship" between an accused and his counsel. Morris v. Slappy, 461 U.S. 1, 14, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983).
 
 
 27
 A review of the record in light of these factors compels a rejection of Carrasco's Sixth Amendment claim. We note that Carrasco's motion for substitution was made on the very day set for trial. The trial court acknowledged the untimeliness of the motion thus: "[w]e have jurors from all the island and [the] whole justice system is set up to try this case." Tr. Vol. VI, p. 11. The record also reveals that the trial court adequately inquired about Carrasco's complaints and that, despite his contentions, the disagreement between Carrasco and his trial counsel were not "so great that it resulted in a total lack of communication presenting an adequate defense."
 
 
 28
 Although admitting that there were communication problems between them, trial counsel explained his role. He said:
 
 
 29
 "Since the beginning of this case. I've had ample opportunity to communicate with him. I have interviewed every member of his family. I have gone to his family's house about five or six times, four or five times. All his uncles are here. They have been to my office. I have been--done a thorough job, as I've done in every case that I have been assigned to, and every case that I have been retained. I don't know any other way to do my work."
 
 
 30
 We do not overlook the fact that there were communication problems between Carrasco and his counsel that persisted until after the completion of the trial. These problems, however, did not amount to a denial of the accused's rights to effective assistance of counsel. It cannot be said that the disagreement prevented an adequate defense. Allen, supra. The record shows that throughout the case trial counsel vigorously defended his client. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).
 
 IV. The Refusal to Exclude the Case Agent
 
 31
 Carrasco and Allen also argue that the trial court abused its discretion when it denied defendant's motion to exclude agent Rivera while the informant testified. In the alternative, Carrasco and Allen claim that the court abused its discretion by not ordering agent Rivera to testify before the informant.
 
 
 32
 Fed.R.Evid. 615 requires that the trial court sequester witnesses at the request of a party. There are several exceptions to this rule, however. The most common is that a party who is a natural person cannot be excluded from the courtroom. As an extention of this basic principle, Fed.R.Evid. 615(2) provides that, when a party is not a natural person, its designated representative is also exempted from the sequestration rule. It seems clear that a case agent representing the government is within this exception. The Senate Report explains the desirability of the rule thus:
 
 
 33
 "Many district courts permit government counsel to have an investigative agent at counsel table throughout the trial although the agent is or may be a witness. The practice is permitted as an exception to the rule of exclusion and compares with the situation defense counsel finds himself in--he always has the client with him to consult during the trial. The investigative agent's presence may be extremely important to government counsel, especially when the case is complex or involves some specialized subject matter. The agent, too, having lived with the case for a long time, may be able to assist in meeting trial surprises where the best-prepared counsel would otherwise have difficulty.... Furthermore, it could be dangerous to use the agent as a witness as early in the case as possible, so that he might then help counsel as a nonwitness, since the agent's testimony could be needed in rebuttal. Using another, nonwitness agent from the same investigative agency would not generally meet government counsel's needs."
 
 
 34
 Senate Report No. 93-1277 as quoted in 10 Moore's Federal Practice 2d Sec. 615.01 (1988).
 
 
 35
 Defendants maintain, however, that even after the promulgation of the new Federal Rules of Evidence, the court retained discretion to exclude a person who falls within the 615(2) exception. The courts are divided on this issue. Some cases support defendants' view that the trial court has discretion to exclude the government case agent. United States v. Thomas, 835 F.2d 219, 223 (9th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988); United States v. Woody, 588 F.2d 1212, 1213 (8th Cir.1978), cert. denied, 440 U.S. 928, 99 S.Ct. 1263, 59 L.Ed.2d 484 (1979).
 
 
 36
 The majority view, however, is that Fed.R.Evid. 615(2) has severely curtailed the discretion of the trial court to sequester the government's case agent. See 3 Weinstein's Evidence, Sec. 615, n. 8 and cases therein cited. The practical and policy concerns inherent in the promulgation of the rule support this view.[2] See Senate Report, supra. Thus, we reject defendants' argument.
 
 
 37
 The second argument advanced by defendants is that the court abused its discretion by not requiring that agent Rivera testify before Castillo. Counsel for Carrasco had asked the court to alter the order of the witnesses to allow Castillo to be sequestered while agent Rivera testified. The request was on the grounds that counsel had "found numerous contradictions" in the statements of agent Rivera and Castillo. Although discretion to exclude the government agent under Fed.R.Evid. 615 is limited, under Fed.R.Evid. 611(c) the court has ample discretion to control the order of interrogating witnesses. See United States v. Butera, 677 F.2d 1376, 1381 (11th Cir.1982), cert. denied, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983); In re United States, 584 F.2d 666 (5th Cir.1978). However, this discretion should be used sparingly and good reason should exist before the court intervenes in what is essentially a matter of trial strategy. Defendants have not shown that the trial court abused its discretion in refusing to alter the order of the witnesses as chosen by the government. The government had chosen to present the evidence in a chronological manner. Castillo testified before agent Rivera purportedly because the events recounted by him preceded those recounted by agent Rivera. The naked assertion by Carrasco that there were "numerous contradictions" between the two witnesses does not move us to conclude that the trial court abused its discretion. No error was committed.
 
 V. Limitation of Cross-Examination
 
 38
 During the cross-examination of agent Rivera, Allen sought to impugn his credibility with reports and notes prepared by other agents involved in the operation. Allen explained that all along he was under the impression that the notes had been prepared by agent Rivera. The judge ruled that Allen could not use the reports or notes during the cross-examination of Rivera because the subject matter was not part of the direct examination. It allowed, however, the use of these reports in the questioning of the agents that prepared them. The government informed the court that most of the agents were available to testify if the defense so desired. Nevertheless, Allen never requested the presence of any of these other agents.
 
 
 39
 On appeal Allen insists that he should have been able to cross-examine Rivera with the report of a special agent, Nieves. He contends the limitation imposed by the trial court violated his Sixth Amendment right to confront witnesses. We disagree. This is not a case where defendant was "prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness...." Delaware v. Van Arsdall, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). The right to confront and cross-examine government witnesses, although broad, is not absolute. See id. at 679, 106 S.Ct. at 1435; United States v. Wilson, 798 F.2d 509, 518 (1st Cir.1986). Considering that the reports and notes were not prepared by the witness and that Allen had the opportunity to confront the agents with the documents that they prepared, we find that the court below did not abuse its discretion in limiting the cross-examination of agent Rivera. United States v. Rivera Santiago, 872 F.2d 1073 (1st Cir.1989).
 
 
 40
 In any case, assuming, arguendo, that error was committed, we find that it was harmless. Van Arsdall, 475 U.S. at 680, 106 S.Ct. at 1436. Allen indicates only two "discrepancies" between Rivera's testimony and the report of agent Nieves. First, he says that while Rivera testified that the second time Machor came out of the restaurant, Allen accompanied him, Nieves does not mention Allen at that particular point of the report. Nieves does confirm, however, that Allen was outside the restaurant when Machor showed Rivera the cocaine. Second, Allen says that while Rivera says that after viewing the cocaine he shook hands with Allen, Nieves does not mention this. Thus, the "discrepancies" amount to two minor omissions in agent Nieves' report. This, coupled with the fact that Nieves was available for questioning convinces us that if an error was committed, it was harmless.
 
 
 41
 VI. The Propriety of the Prosecutor's Conduct
 
 
 42
 Carrasco, Brito and Allen contend that the prosecutor incurred in improper conduct by contrasting his own credibility against the defendants' and by using comments calculated to inflame the jury during closing arguments. Appellants urge reversal based on the alleged prejudice that resulted from the prosecutor's conduct.
 
 
 43
 During rebuttal the Assistant United States Attorney stated:
 
 
 44
 [Defense counsel] has told you about the arrogance of the government, the arrogance of the state. Let me tell you something, the United States Government is at war against narcotics. Okay. And if being engaged in war means being arrogant, we are going to be extremely arrogant. You know why, because this is poisoning our community, and our kids die because of this. And if we have to engage in war and become arrogant we are going to be very arrogant.
 
 
 45
 Counsel for the defense is telling you that this is not your problem. Counsel for the defense says where this thing appears that is not your problem. Let me tell you something, this is your problem. This is our problem, this white powder here. And the evidence has shown to you that these four defendants, since November 25, 1986, were engaged in importing into Puerto Rico this cocaine. And they were caught the next day. So, aside from what Counsel Lima is telling you, I have a very different point. This is the problem of everyone here in this community. That's the reason why we presented this case without having to fix it, because we presented to you the people who were there. The informant, the sergeant, and the defendants. And in order to present this case, do you really think we have to fabricate it[?] As Carrasco told you, that even the prosecutor was here fabricating a case. That's me.
 
 
 46
 I'm going to finish telling you something very brief. You know what the government requests from all of you, to teach them a lesson that Counsel Rodriguez Padilla is requesting. Counsel Rodriguez Padilla tells them, says let's teach a lesson. He wants to teach a lesson to Sergeant Rivera and to me, the government. Let's go and teach them the lesson. Let's teach them that we don't have prejudice against aliens who are good persons, who don't engage in drug trafficking. But if finding a guilty verdict against aliens who are involved in drug trafficking is prejudice, let's be prejudice[d]. Let's be extremely prejudice[d], because that is what they are, they are drug traffickers who came to our island to bring cocaine. That's why we are requesting to teach them the lesson. Let's make justice. Let's finish with them. Thank you very much.
 
 
 47
 Defense counsel neither objected to the prosecutor's statements nor requested a special curative instruction. Thus the prosecutor's remarks are subject to the plain error rule. United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1984); United States v. Mejia-Lozano, 829 F.2d 268 (1st Cir.1987). Although the prosecutor's statements somewhat exceeded appropriate argument, we find that under the particular circumstances of this case defendants have failed to show plain error.
 
 
 48
 Time and again we have stressed the United States Attorney's unique position in our criminal justice system. United States v. Doe, 860 F.2d 488, 494 (1st Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1961, 104 L.Ed.2d 430 (1989); United States v. Ingraldi, 793 F.2d 408, 416 (1st Cir.1986); United States v. Maccini, 721 F.2d 840, 846 (1st Cir.1983).
 
 
 49
 "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.... It is as much his duty to refrain from improper methods calculated to produce a conviction as it is to use every legitimate means to bring about a just one."
 
 
 50
 United States v. Capone, 683 F.2d 582, 585 (1st Cir.1982) (quoting Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)).
 
 
 51
 Some of the prosecutor's comments, such as "[drugs] are poisoning our community and our kids die because of this," are improper because they serve no purpose other than "to inflame the passions and prejudices of the jury, and to interject issues broader than the guilt or innocence of the accused." United States v. Doe, 860 F.2d at 494. Also disturbing is the fact that during the cross-examination of Carrasco, the prosecutor contrasted his own credibility with Carrasco's.
 
 
 52
 The issue here, however, is not whether the government's actions were exemplary but whether in the context of this case the prosecutor's conduct warrants reversal under the plain error rule. Fed.R.Crim.P. 52(b).
 
 
 53
 We review the prosecutor's appeal to passion under the criteria set by United States v. Capone, supra, as restated in United States v. Maccini, supra. First, we note that the prosecutor's comments were isolated. They certainly were not "cumulative evidence of a proceeding dominated by passion and prejudice." United States v. Capone, 683 F.2d at 586 (quoting United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 240, 60 S.Ct. 811, 852, 84 L.Ed. 1129 (1940)). Also, comments such as "let's go and teach them the lesson" were made in rebuttal to similar statements made by defense counsel. Although the government is not entitled to "fight fire with fire" at all costs, the fact that defense counsel comments "invited a reply" is a relevant consideration. United States v. Young, 470 U.S. at 11, 105 S.Ct. at 1044; United States v. Mejia-Lozano, 829 F.2d at 274. Second, the trial court warned the jury about the nature of the closing arguments: the court said:
 
 
 54
 "[A]s you will recall I had stated in my preliminary instructions that the closing arguments, as well as the opening arguments, are not evidence. They are merely the opinions of the attorneys themselves and on what they felt that they had proven during the course of this trial."
 
 
 55
 Finally, it is unlikely that the prosecutor's appeal to passion, viewed in the context of the whole case, affected the jury's belief about the innocence or culpability of defendants, especially considering that the evidence presented by the government as to the crime for which defendants were found guilty was very strong.
 
 
 56
 Similarly, we find that the prosecutor's cross-examination of Carrasco was not prejudicial. On direct examination Carrasco testified essentially that he was not involved in the drug transaction and that he was being framed. On cross-examination, the prosecutor inquired: "[S]o, according to your testimony, the government, Sergeant Rivera, the informant [and] the prosecutor have come here to frame you?" Carrasco replied: "[Y]es, Sir." On rebuttal to the defense's closing arguments, the prosecutor also referred to Carrasco's "framing theory" and essentially contrasted his credibility to Carrasco's. Considering that these comments were in response to Carrasco's own theory and to the defense's closing arguments we find that the comments were not prejudicial.
 
 VII. Appointment of a Jury Foreperson
 
 57
 Allen and Carrasco claim that the judge's appointment of a jury foreperson, instead of letting the jury pick one itself, was a violation of due process. No objection was raised at trial and defendants do not cite any authority to support this novel argument. We find this argument to be totally without merit.
 
 VIII. Sentencing
 
 58
 The Anti-Drug Abuse Act of 1986, 21 U.S.C. Sec. 841(b)(1)(B), which became effective a month before these crimes were committed, removed the possibility of parole. Defendants argue that during sentencing the district court acted on the incorrect assumption that defendants would be eligible for parole. Although there is no specific indication in the record that the trial judge actually assumed that they would be eligible for parole, defendants point to several indications suggesting that the judge may have been operating under such an assumption. See U.S. v. Russell, 870 F.2d 18 (1st Cir.1989); United States v. Harris, 558 F.2d 366, 374 (7th Cir.1977).
 
 
 59
 We are in no position to decide whether the trial court sentenced defendants under this incorrect assumption. We note, however, that under Fed.R.Crim.P. 35 defendants can petition the trial court for reduced sentences. In this manner, the trial court may correct the sentences if in fact it was under the assumption that defendants would be eligible for parole.
 
 
 60
 Appellants' convictions are affirmed.
 
 
 
 [1]
 The court may, of course, use other alternative procedures under Fed.R.Evid. 104 such as holding a separate admissibility hearing
 
 
 [2]
 We are not holding however, that the rule withdraws all discretion from the trial court to exclude a case agent in an exceptional case. Cf. United States v. Anagnos, 853 F.2d 1 (1st Cir.1988). Because this is not such a special circumstance, we need not decide the point