UNITED STATES of America, Appellee,

v.

Wesner RICHARDSON,
Defendant, Appellant.

No. 89–1013.

United States Court of Appeals,
First Circuit.

Heard June 9, 1989.
Decided Jan. 30, 1990.

Lydia Lizarribar–Masini, Old San Juan, P.R., for appellant.

Warren Vazquez, Asst. U.S. Atty., Crim. Div., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief, for the U.S.

Before CAMPBELL, Chief Judge, TORRUELLA, Circuit Judge, and CAFFREY,* Senior District Judge.

CAFFREY, Senior District Judge.

The defendant Wesner Richardson appeals his conviction on July 20, 1988 following a jury trial in the United States District Court of Puerto Rico.[1] The jury found Richardson guilty of charges involving possession, importation, and carrying on board an aircraft approximately 3.1 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 952(a), and 955. On appeal, Richardson claims that he was denied his right to select counsel of his choice before trial in violation of the sixth amendment. Specifically, Richardson argues that the district court erred in denying his request to substitute a privately-paid lawyer for his court-appointed lawyer on the morning of his trial. After a careful review of the record in this case, we find Richardson's arguments unpersuasive, and, accordingly, we affirm.

* Of the District of Massachusetts, sitting by designation.

## I.

On May 13, 1988, Richardson arrived at Luis Munoz Marin International Airport in San Juan, Puerto Rico. Richardson was traveling from Haiti to Puerto Rico on board Air France flight No. 363. Richardson attempted to pass through customs inspection with a large cardboard box containing three carved wooden statues. Customs officials screened the statues with X-rays which revealed an object inside each statue about the size and shape of a loaf of bread. Customs officials then drilled holes in the statues and extracted a white powdery substance from the inside of the statues. The substance field tested positive as cocaine. Richardson was detained following the customs inspection.

On May 16, 1988, Richardson appeared before United States Magistrate Roberto Schmidt–Monge. Richardson was interviewed by a pretrial services officer, advised of the charges against him, advised of his rights, and given a copy of the complaint. At this time, the magistrate issued a commitment order to detain Richardson without bail and authorized court-appointed counsel for him. On May 17, 1988, John Ward was appointed to represent Richardson.

On May 18, 1988, a detention hearing was held before the magistrate. The government offered the testimony of DEA Agent Richard Smith who recounted the events of the customs inspection at the airport. Ward represented Richardson at the hearing, and Ward cross-examined Smith before the magistrate. The magistrate ordered that Richardson be held without bail pending trial.

On the same date, a grand jury returned a three-count indictment charging the defendant with violations of 21 U.S.C. §§ 841(a)(1), 952(a), and 955. On May 25, 1988, Richardson was arraigned and pled not guilty to all three counts. Ward represented Richardson at the arraignment.

On July 19, 1988, the case was called for jury trial before United States District

1. Honorable Raymond L. Acosta, United States District Judge presiding.

Judge Raymond L. Acosta. Before the trial began, Ward made the following request to the court:

> MR. WARD: On behalf of the defendant Wesner Richardson, Attorney John Ward and we are ready and we are prepared but we have something, the U.S. Attorney and myself would like to state something to the court before we proceed.
>
> THE COURT: What is it?
>
> MR. WARD: Yesterday, I went to interview my client Wesner Richardson at about two o'clock in the afternoon. At that time he informed me that Counsel Juan Casanovas had visited him previously, and that through the visit of Casanovas he has hired Counsel Samuel Maduro. And that he decided him to be his lawyer from then on, so this attorney understands that he has been discharged from the case by the client and it's brought to your attention.
>
> THE COURT: Who has been discharged?
>
> MR. WARD: Myself, by the client, your Honor. It's very difficult for me to go into these conditions and I propose to your Honor the situation for your determination.
>
> THE COURT: Have you studied the facts in this case and interviewed the client?
>
> MR. WARD: Yes, your Honor.
>
> THE COURT: Let's have the defendant come up here. Mr. Richardson.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did you hear what Counsel Ward has just stated to the court. Did you hear what he just said?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Would you give us your version of what happened here, that you hired the services of Mr. Maduro?
>
> THE DEFENDANT: Last week, my wife came over here, and she told me she going to hire private lawyer. And three weeks before he came to me, the lawyer came, he say he's going to be working my case. But someone name Casanovas came, Maduro he's the one that is going to work on my case, but he's not here right now. He going out of town, he probably come back today. So when he came yesterday I explained to him that because I don't know.
>
> THE COURT: Have you ever spoken to Mr. Maduro? Have you ever spoken to him?
>
> THE DEFENDANT: Last week, one time.
>
> THE COURT: Where?
>
> THE DEFENDANT: In the jail. He come and he say my wife going to take him for my case. If he's willing to do my case he come back to spoke with me but he doesn't come back.
>
> THE COURT: He didn't come back?
>
> THE DEFENDANT: No.

Trial Transcript at 2–4.

The district court went on to question Ward and Richardson about the request for new counsel. Ward told the court that he had gone to interview Richardson in jail the day before trial and at that time he first learned of Richardson's desire to retain private counsel. Ward said that he tried to contact attorney Samuel Maduro or his associate attorney Juan Casanovas after speaking with Richardson, but Ward was unable to reach either attorney by telephone. Ward told the court that he was familiar with the case and prepared to go forward with the trial.

Richardson told the district court that his wife had contacted Maduro and then Richardson had spoken with Maduro in jail the week prior to trial. According to Richardson, Maduro was to meet with Richardson's wife and discuss the price for representing him. If those matters were settled, then Maduro would return to meet with Richardson in jail. Later, Casanovas returned to tell Richardson that Maduro had received money from Richardson's wife and they would be working on the case. Maduro, however, failed to appear the morning of trial.[2]

Richardson told the court that he originally filed an *in forma pauperis* form for

---

2. It appears that Maduro's failure to appear in court was due, in part, to a rescheduling of the trial date. In the week before trial, the parties consented to move the trial forward one day from July 20 to July 19. Since Maduro was not counsel of record and did not contact Ward

court-appointed counsel because he had no family in Puerto Rico to call or to get money from before the various hearings in front of the magistrate. Richardson also said he was dissatisfied with Ward as his counsel because they had only met to prepare his case once before trial.

After this inquiry, the district court made the following ruling:

The Court finds that the only complaint the defendant has with respect to the representation by Mr. John Ward is that he didn't meet sufficiently with him. But on the other hand, he also admits that Mr. Maduro only met with him once for a very short period. And also Mr. Maduro has not filed an appearance in this case, and even assuming that this case were to be tried tomorrow, as it was originally scheduled for, the Court acknowledges it was moved only one day.

That, even assuming that, Mr. Maduro has not filed an appearance and the Court is hard put to understand how you can file an appearance today and be prepared to try a case tomorrow, when he hasn't even reviewed the file. He hasn't adhered to the standing order of this Court with respect to the submission of jury voir dire questions and instructions.

Also, there is the matter of expenses involved. The government states that there is a chemist that is in transit at this very moment to Puerto Rico, as well as other expenses that are involved, including the jury that has been summoned. And also, that the Court frankly feels that it would be a disservice to the defendant to allow him to utilize the services of Mr. Maduro who hasn't even filed an appearance in this case.

So we're going to proceed with this case.... For the record, also it should be indicated that Mr. Ward who was appointed by the court to represent the defendant has stated that he's ready, willing and able to defend the defendant to the best of his ability.

Trial Transcript at 15–16.

The district court also issued an order to show cause for attorney Maduro to explain why he should not be sanctioned for his conduct. Later that day, Madura and Casanovas appeared before the court to answer questions. Maduro said he first met Richardson sometime the week before trial and, at that time, Richardson told Maduro to contact Richardson's wife for money to retain Maduro. Maduro contacted Richardson's wife who delivered a $4,000 check to Maduro's office three days before trial. Maduro then tried to contact Ward at his office.

The district court then admonished Maduro for "talking to defendants when you have even a scintilla of evidence that they are being represented by another attorney." The court told Maduro never to accept money or proceed in a case before contacting the attorney representing a defendant. The district court then ordered Maduro to deposit the $4,000 check with the court and then to contact Richardson's wife as soon as possible for return of the money.

During the trial, the government presented three witnesses including DEA agent Smith who had testified at the detention hearing. Ward cross-examined each witness and, at the close of the government's case, moved for dismissal arguing that the government had failed to prove knowledge sufficient to prove possession of the cocaine. The court denied the motion. The defense did not present any witnesses, and, following closing arguments, the jury returned a guilty verdict on all three counts charged.

On August 5, 1988, Richardson moved for a new trial arguing that he was denied his sixth amendment right to counsel at trial. Richardson claimed that the court erred in denying his request to have Maduro represent him at trial. The court denied the motion, and Richardson appealed.

## II.

The sixth amendment right to effective assistance of counsel encompasses the

before trial, Maduro did not know of the re-

scheduling.

corollary that defendants have a right to choose their counsel. *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932) ("It is hardly necessary to say, that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."); *Panzardi–Alvarez v. United States,* 879 F.2d 975, 980 (1st Cir.1989) [hereinafter *Panzardi II* ][3]; *United States v. Diozzi,* 807 F.2d 10, 12 (1st Cir.1986). *See also Morris v. Slappy,* 461 U.S. 1, 21–23, 103 S.Ct. 1610, 1621–22, 75 L.Ed.2d 610 (1983) (Brennan, J., concurring). Thus, we have recognized that "when an accused is financially able to retain an attorney, the choice of counsel to assist him rests ultimately in his hands and not the hands of the state." *United States v. Panzardi–Alvarez,* 816 F.2d 813, 816 (1st Cir.1987) [hereinafter *Panzardi I* ] (quoting *Wilson v. Mintzes,* 761 F.2d 275, 280 (6th Cir. 1985)). *See also Panzardi II,* 879 F.2d at 980 (quoting *Wilson,* 761 F.2d at 280).

■ The right of an accused to counsel of his choice, however, is not absolute. *See United States v. Machor,* 879 F.2d 945, 952 (1st Cir.1989); *Panzardi II,* 879 F.2d at 980; *Panzardi I,* 816 F.2d at 816.

A criminal defendant's exercise of this right cannot unduly hinder the fair, efficient and orderly administration of justice. An accused's right to choose his own counsel cannot be manipulated to delay proceedings or hamper the prosecution. When a defendant attempts to substitute counsel at the eleventh hour or in mid-trial, he must show good cause such as a conflict of interest, a breakdown in communication or an irreconcilable dispute with his attorney.

*Panzardi I,* 816 F.2d at 816 (citations omitted). Thus, a trial court has discretion to limit the exercise of the right, and, in doing so, should balance "the defendant's interest in retaining counsel of his choice against the public's interest in the prompt, fair and ethical administration of justice." *Id.* at 817. *See also Tuitt v. Fair,* 822 F.2d 166, 171 (1st Cir.), *cert. denied,* 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987) ("A trial court has extensive discretion over last-minute requests for continuances made in order to secure substitute counsel.").

■ We review a district court's denial of a request for substitution of counsel for abuse of that discretion. *See Machor,* 879 F.2d at 952; *United States v. Torres,* 793 F.2d 436, 440 (1st Cir.), *cert. denied,* 479 U.S. 889, 107 S.Ct. 287, 93 L.Ed.2d 261 (1986); *United States v. Allen,* 789 F.2d 90, 92 (1st Cir.), *cert. denied,* 479 U.S. 846, 107 S.Ct. 164, 93 L.Ed.2d 103 (1986); *United States v. Mastroianni,* 749 F.2d 900, 913–14 (1st Cir.1986). In analyzing the district court's actions,

[T]he appellate court should consider several factors, including the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense.

*Allen,* 789 F.2d at 92. Further, in weighing the factors announced in *Allen,* "one should bear in mind that the right to counsel does not involve the right to a 'meaningful relationship' between an accused and his counsel." *Machor,* 879 F.2d at 952 (quoting *Morris v. Slappy,* 461 U.S. 1, 14, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983)). In light of these standards, we now turn to the facts of this case.

■ The sole issue presented by this appeal is whether the district court erred in denying Richardson's request to substitute a privately-paid lawyer for his court-appointed lawyer on the morning of trial.[4] Richardson argues that the district court abused its discretion by improperly weighing the interests of the government and the court in going forward with trial against

---

**3.** A preceding case involving the same parties, *United States v. Panzardi–Alvarez,* 816 F.2d 813 (1st Cir.1987), shall be cited below as *Panzardi I.*

**4.** In his brief, Richardson challenges separately the district court's actions in denying his request for new counsel on July 19, 1988 and denying

his motion for a new trial on August 29, 1988. Both actions by the district court, however, involve the same issue and the same standard of review. Consequently, we shall review both district court actions together.

Richardson's sixth amendment right to select counsel of his choice. On a careful review of the record and the applicable law, however, we find the district court did not abuse its discretion.

First, Richardson's request for substitute counsel was made at the last possible moment before trial. The district court first received notice of Richardson's dissatisfaction with his court-appointed attorney, Ward, and his desire to hire a private lawyer, Maduro, on the morning of trial. The court had appointed Ward to represent Richardson two months before the trial date. Ward represented Richardson at his detention hearing and at his arraignment. Richardson had contact with his court-appointed lawyer well before trial, had ample time to retain his own counsel, and had the opportunity to express his dissatisfaction with Ward long before the morning of trial.

Second, the district court thoroughly inquired into Richardson's complaint. The court questioned both Ward and Richardson that morning. The court discovered the nature of Richardson's dissatisfaction, the details of his contact with Maduro, and the preparedness of Ward. Furthermore, the court brought Maduro and his associate before the court in the afternoon to corroborate the information gathered in the morning.

Third, the district court found that Ward was prepared and able to present Richardson's case. Ward had represented Richardson at the detention hearing where he learned the principal facts of the case and cross-examined one of the prosecution's chief witnesses, DEA agent Smith. Further, Ward met and communicated with Richardson about his case, even though at a late date, before the trial. In speaking to the court, Richardson expressed his general dissatisfaction with Ward without expressing any specific breakdowns in communication or refusals to cooperate. Despite some hesitancy, Ward told the court he was familiar with the facts of the case and ready for trial.

Fourth, the government's and the court's interests in proceeding with the trial were substantial. At the time of Richardson's request, the prosecution was prepared for trial, the government's expert witness was already en route to Puerto Rico from Florida, and jurors had been summoned from across the island. Maduro was not present in court, had not filed an appearance in the case, and had not directly notified the court-appointed attorney of his intervention in the case. Furthermore, according to Richardson's own statements to the court, Maduro had only met with Richardson once in jail to discuss the possibility of representing him, and, on the morning of trial, Maduro had not personally contacted Richardson concerning the merits of his case. Thus, the district court was presented with a defendant's request for a new lawyer who was not present and not prepared the morning of trial.[5]

In response, Richardson argues that the district court did not properly consider his circumstances. Richardson claims that he raised his objection concerning Ward at the earliest possible opportunity. Further, Richardson argues that he should not suffer for his new private counsel's failure to appear and to be prepared. But upon due consideration, these responses are not persuasive.

Richardson had two months from the time of his initial detention to hire new counsel or express dissatisfaction with his present counsel. Richardson had the opportunity to talk with Ward and to observe Ward's in-court practice at the time of his detention hearing and at his arraignment. Richardson, however, did not express any dissatisfaction to the magistrate during

---

**5.** We also note that the possible appointment of Maduro presented the district court with certain ethical considerations. Maduro and his associate Casanovas had apparently met with Richardson, discussed his case, and received a $4,000 retainer from Richardson's wife before even contacting Ward. According to statements from Maduro and Ward, it appears Maduro knew that Richardson had appointed counsel and, due to Casanovas's actions, it appears Maduro knew Ward was Richardson's counsel. In light of these facts, the court could also properly weigh the ethical considerations of appointing Maduro in denying Richardson's request for new counsel. *See, e.g., Panzardi II,* 879 F.2d at 981 (court upheld denial of *pro hac vice* application where possible conflict of interest and ethical violations).

these proceedings nor did he make his desire to hire private counsel known to the court or the magistrate until the morning of trial. In fact, neither Richardson nor his wife actually pursued their interest in private counsel until less than a week before trial.

Although Richardson has the right to choose his counsel, his exercise of that right "cannot unduly hinder the fair, efficient and orderly administration of justice." *Panzardi I,* 816 F.2d at 816. In this case, where Richardson waited until the last minute to exercise his right to choose private counsel, we cannot say that the district court abused its discretion in proceeding with trial. *See Machor,* 879 F.2d at 952–53 (court upheld denial of request for removal of court appointed counsel on the day of trial); *Torres,* 793 F.2d at 440–41 (court upheld denial of request for substitution or for continuance made on the day of trial); *Mastroianni,* 749 F.2d at 913–14 (court upheld denial of motion to substitute private counsel for court-appointed counsel four days before trial).

Further, while we agree that Richardson should not be punished for his new attorney's failings, we note that this case does not present any question that Ward, as court-appointed counsel, failed to effectively represent Richardson. In his brief, Richardson admits "the competency of Mr. Ward is not an issue and neither is the result of the trial." Appellant's Brief at 19. In fact, a review of the record suggests Richardson was competently represented by Ward throughout the trial. Therefore, we do not see how Richardson suffered for his private counsel's failure to prepare and appear on the morning of trial.

In conclusion, we find that the district court did not abuse its discretion in deciding that the government's and the court's interests in proceeding with trial outweighed Richardson's request for a new lawyer on the morning of trial.

We affirm.