**UNITED STATES, Appellee,**

v.

**Michael J. PROCHILO, Defendant, Appellant.**

**No. 98–1415.**

United States Court of Appeals, First Circuit.

Argued May 6, 1999.

Decided Aug. 12, 1999.

---

Alan D. Campbell, by appointment of the Court, for appellant.

James F. Lang, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for appellee.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and POLLAK,* Senior District Judge.

POLLAK, District Judge.

On December 4, 1996, Michael J. Prochilo was charged, in a one-count indictment, with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).[1] Specifically, the grand jury alleged that Prochilo, having previously been convicted of a felony, on or about September 27, 1996, possessed a .25 caliber semi-automatic pistol (Raven, Model P–25) and also some .25 caliber ammunition. The charges were tried before a jury: the jury was empaneled and sworn on May 19, 1997; opening statements and initial testimony were heard the next day; and on May 29 the jury returned a verdict of guilty. Prochilo's sentencing took place on March 26, 1998. Due to his substantial prior criminal history, Prochilo was classified as an armed career criminal, pursuant to 18 U.S.C. § 924(e), and was sentenced to a prison term of 327 months, followed by 60 months of supervised release.

On this appeal, Prochilo contends that his conviction is flawed. His claim of error is not, however, addressed to any matters that transpired before the trial jury. The focus of the appeal is Prochilo's claim that, prior to trial, he advised the district court that he and his appointed counsel were in substantial disagreement about the conduct of his defense, and that he wished to be represented by retained counsel who, if a continuance were granted, would be willing to serve, but that the district court, without inquiring into the matter, denied the requested continuance, thus compelling Prochilo to go to trial represented by counsel not of his choice, in contravention of the Sixth Amendment.

## I.

In order to analyze the legal issues presented by this appeal, it will be necessary to set forth in some detail the procedural history that forms the background of Prochilo's claim of error.

Prochilo's initial court appearance took place before a magistrate judge on December 30, 1996, not quite four weeks after Prochilo was indicted. On a showing of indigence, the magistrate judge appointed the Federal Public Defender, in the person of Defender attorney Charles McGinty, to represent Prochilo. On the government's motion, Prochilo was detained pending a further hearing. On January 3, 1997, Prochilo was arraigned before the magistrate judge, pleading not guilty; at the same hearing, the magistrate judge (1) scheduled Prochilo's trial for February 24, and (2), on the government's motion, to which Prochilo assented, directed that Prochilo remain in custody. On February 24, the district court rescheduled the trial for May 12. On March 31, the district court, acting on a government motion for a week's continuance to which the defendant agreed, moved the trial date forward to May 19.

On May 9—ten days before the new trial date—an attorney named Barry P. Wilson filed two documents. The first was a notice of appearance as counsel for Prochilo. The second was a "Motion To Continue

---

* Of the Eastern District of Pennsylvania, sitting by designation.

1. (g) It shall be unlawful for any person—
 (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year
 
 \* \* \* \* \* \*
 
 to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Trial Date," requesting that trial be postponed "to the first week of September, 1997." In support of the motion, Wilson stated:

1. I was contacted by Mr. Prochilo to represent him within the last week;

. . . . .

3. As a result of his contacting me, his family contacted me and indicated that they wished me to consider representing him;

4. As a result of the family contacting me, I have visited Mr. Prochilo at the Plymouth County jail and he wants me to represent him because he and his present counsel have significant differences as to how this case should be tried;

5. After conferring with his present counsel, Charles McGinty, as well as briefly reviewing documents made available through the discovery process, I informed Mr. Prochilo that unless I received a continuance of his trial date I would not be able to represent him;

6. I also told Mr. Prochilo that due to my present trial schedule, including a trial in this court that is scheduled to begin on June 30, 1997, in front of Judge Woodlock (approximately one (1) week as well as numerous trials scheduled in both Superior Court and District Courts (jury of six sessions) throughout this time frame, as well as a long scheduled vacation (South Africa) that commences on June 5, 1997, to June 22, 1997), that I would request a trial date in September.

7. Mr. Prochilo has no problem with this request and in fact wants it so that I can represent him and given the serious-

ness of this case this request seems eminently fair and reasonable;

8. I have conferred with James Lang, the Assistant United States Attorney, who is presenting the case and he says that he cannot agree to any continuances. However, it is my understanding that he has previously requested a continuance of the trial date in this matter, that the defendant assented to said request and said request was granted by this court;

9. It should be noted that a denial of this motion will only hurt Mr. Prochilo as he is facing a very lengthy sentence. Mr. Prochilo will not be on bail pending the new trial date nor is there any reason to believe that this continuance would harm the government in any way.

On behalf of the district judge, the judge's deputy clerk stamped the motion papers with what the docket refers to as an "endorsed order"—"MOTION DENIED"—on the day the motion was filed.

On May 13 Wilson filed a "Motion For Reconsideration Of Motion To Continue Trial Date."

The motion for reconsideration noted that the May 9 motion had been "denied ... without a hearing" and stated that "[i]t is apparent that the only reason for the denial of Mr. Prochilo having counsel of his choice, is the calendars of the Court and the Assistant United States Attorney rather than any serious problems with the Government presenting its case"; further, the motion for reconsideration reiterated that Prochilo "and his present counsel have significant differences as to how the case should be tried," and "requested that this Court grant this motion but at a minimum, a hearing is requested." [2] The mo-

---

**2.** The motion for reconsideration filed by Wilson on Prochilo's behalf advanced other arguments as well. One of Wilson's arguments was that Prochilo had "anticipated standing trial" in the courts of Massachusetts, with which he "has had previous experiences," but the fact that he was to be tried in a federal court led him to "realiz[e] the severity of this matter," with the result that, "with the assistance of his family, [he] retained private coun-

sel." Another Wilson argument went as follows:

This Court, beyond scheduling and convenience, as was the reason why the Assistant United States Attorney opposed a continuance, cannot justify this refusal to give the defendant the opportunity to have the counsel of his choice properly represent him except by the fact that it can make that ruling. The power alone is not reason

tion for reconsideration was denied by the district court on May 20, the day after Prochilo's trial began. The court's "endorsed order"—a handwritten endorsement on the first page of the motion—recited: "Motion denied as moot, jeopardy having attached." [3]

## II

The question presented by this appeal is whether the district court's denial of lawyer Wilson's sequential motions, on Prochilo's behalf, for (1) a continuance, and (2) reconsideration, without any inquiry into the nature of the asserted conflict between Prochilo and his appointed counsel and when that conflict arose, constituted an abuse of discretion. To put this question into focus we must have recourse to the legal principles governing situations of this kind.

 The principles applicable to cases in which a criminal defendant asks that appointed counsel be replaced were announced by this court in *United States v. Allen,* 789 F.2d 90, 92 (1st Cir.), *cert. denied,* 479 U.S. 846, 107 S.Ct. 164, 93 L.Ed.2d 103 (1986), and remain the governing law:

> Where the accused voices objections to appointed counsel, the trial court should inquire into the reasons for the dissatisfaction.... In evaluating whether a trial court's denial of motion for continuance constituted an abuse of discretion ... the appellate court should consider several factors, including the timeliness of the motion, the adequacy of

the court's inquiry into the defendant's complaint, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense

*Accord United States v. Pierce,* 60 F.3d 886, 891 (1st Cir.1995); *United States v. Richardson,* 894 F.2d 492, 496 (1st Cir. 1990).

In the case at bar, the district court did not "inquire into the reasons for the dissatisfaction." The government, in its brief, addresses this aspect of the case in the following words: "Concededly ... the court's failure to make any inquiry about the asserted 'differences' between the defendant and appointed counsel would seem to bolster the defendant's contention that he is entitled to appellate relief. On consideration of the somewhat unique circumstances presented in this case, however, it does not." In arguing that in this "somewhat unique" instance inquiry was unnecessary, the government advances three contentions: (1) that the motion for a continuance was untimely; (2) that the motion for a continuance did not undertake to specify the asserted differences between Prochilo and appointed-counsel McGinty, and was not confirmed by supporting statements of Prochilo or McGinty; and (3) that in all events McGinty in fact did a good job of representing Prochilo at trial, so that Prochilo can demonstrate no prejudice. We will consider each of these contentions in turn.

enough and one wonders if a person of means would have this same problem. Cases, for a variety of reasons, are continued in this Court everyday and not to do it in this case is to only reinforce that the justice system in the United States is out of control and its only goal is to continue to lead the industrialized nations of the world with the highest prison population. Somehow this does not seem to be what the goals of our society should be;

It is difficult to see how such an excess of rhetoric—gratuitously impugning the judge,

the justice system, and the country—could be said to advance the cause of a lawyer's client.

3. The elapsed time between the filing of the motion for reconsideration on May 13 and its denial on May 20 may well be attributable to possible non-transmission of the motion for reconsideration to the district judge's chambers until May 19 or May 20. This would, at least seem a plausible inference from the fact that the docket, although recording a May 13 filing date for the motion for reconsideration, gives May 19 as the motion's "entry date."

1. In arguing that Wilson's motion for a continuance of Prochilo's trial was untimely, the government points out that the motion was filed on May 9, 1997, only ten days before the long-established trial date of May 19, that the motion itself disclosed that Prochilo had only sought to retain Wilson within the previous week, and that McGinty had been appointed to represent Prochilo more than four months before. The government's concern with timeliness is proper. As Judge Friendly noted upwards of thirty years ago (in language we had occasion to quote in *Allen, supra,* 789 F.2d at 93), "Judges must be vigilant that requests for appointment of a new attorney on the eve of trial should not become a vehicle for achieving delay." *Richardson, supra,* 894 F.2d at 496; *United States v. Llanes,* 374 F.2d 712, 717 (2d Cir.1967). *See also United States v. Panzardi Alvarez,* 816 F.2d 813, 816 (1st Cir. 1987); *Tuitt v. Fair,* 822 F.2d 166, 171 (1st Cir.), *cert. denied,* 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987). It may well be the fact that Prochilo—assuming that his asserted "differences" with McGinty were indeed "significant"—was well aware of those differences many weeks before he set about retaining Wilson to represent him at trial; and under such circumstances, the district court would most assuredly have been warranted in declining to give house room to a motion for an extended continuance filed less than two weeks before the date long fixed for the start of the trial. But it may be that the fact is otherwise—*i.e.,* that Prochilo learned in late April that he and McGinty had gravely divergent views on trial strategy and that Prochilo immediately consulted Wilson. The difficulty is that we have no way of knowing which of these two scenarios—or perhaps some third scenario—is the true story. And the reason the true story is not known is that the district court did not inquire and make findings.[4]

2. The government makes the further argument that the district court was provided with no solid information about the nature and extent of the supposed "significant differences" between Prochilo and his appointed counsel. "[I]n support of the motion [for a continuance] new counsel made only a vague and unsupported representation that the defendant and appointed counsel had disagreements regarding trial strategy, without further elaboration. Neither the defendant himself nor appointed counsel, however, ever advised the court at any time that they were experiencing a conflict of any sort. Thus, no compelling need for a continuance was shown, and certainly not one that would have justified the three and a half month delay that was requested in the motion." The government is correct in characterizing Wilson's description of the problem—"significant differences"—as "vague" (and the characterization was not made less vague when reiterated in the motion for reconsideration). But specificity in a motion of this sort cannot be required: a detailed statement of what puts defendant and counsel at loggerheads would almost of necessity reveal to the prosecution much that is customarily shielded from view by a high wall of privilege.[5] Nor is it appropriate to fault Prochilo for not having addressed the court directly; having undertaken to retain new counsel, Prochilo was entitled to proceed on the basis of the conventional understanding that a litigant's communications

---

4. By like token, we do not know, absent inquiry, whether the timing of Prochilo's contact resulted from difficulty in raising the funds necessary to retain a private attorney.

5. The fact that, as the government notes, Wilson's motion for a continuance sought a postponement of the trial for more than three months did not constitute a justification for not inquiring into the claim of conflict between the defendant and his appointed counsel. If inquiry had been conducted and were to have disclosed a conflict serious enough to call for replacement of McGinty by another attorney, the district court could presumably have fashioned a remedy not constrained by Wilson's hyperbolic notions of how long a continuance was called for.

with the court are handled by the litigant's lawyer. Whether McGinty should have been counted on to corroborate, and perhaps enlarge upon, Wilson's recital of "significant differences" would seem to depend on whether McGinty shared his client's perception of the scope and intensity of their "differences"; thus, McGinty's silence cannot, of its own force, serve as an adequate ground for concluding that Prochilo had no need for new counsel. In sum, the paucity of the information provided by Wilson's motion for a continuance was not a reason for denying the motion; it was a further reason for inquiry.[6]

■ 3. Finally, the government, citing *United States v. Diozzi*, 807 F.2d 10, 15 (1st Cir.1986), argues that Prochilo was in fact well represented at trial and hence suffered no prejudice. The government points to *Allen, Pierce, Richardson* and *United States v. Machor*, 879 F.2d 945 (1st Cir.1989) as instances in which this court has concluded that the legal representation accorded the respective defendants was, in each instance, of satisfactory quality. However, in each of those cases, as this court was at some pains to point out, the district court had inquired into the defendant's claim of a breakdown of the attorney-client relationship. In *Allen*, we said: "[T]he court's inquiry, rather than being insufficient as the appellant claims, was comprehensive. We are convinced after reading the transcript of the proceedings that the district court was assured that

Federal Defender Walker had consulted sufficiently with appellant, that Walker was prepared, and that his advice to the defendant to plea bargain was not aberrational. The court convened a session at which appellant's claim was aired. The court invited appellant to make a statement, listened to his reasons for being dissatisfied with his counsel, and found them to be without merit." 789 F.2d at 93. In *Machor* we said: "The record also reveals that the trial court adequately inquired about Carrasco's complaints and that, despite his contentions, the disagreement between Carrasco and his trial counsel were not 'so great that it resulted in a total lack of communication presenting an adequate defense.'" 879 F.2d at 952. In *Richardson* we said: "Second, the district court thoroughly inquired into Richardson's complaint. The court questioned both Ward and Richardson that morning. The court discovered the nature of Richardson's dissatisfaction, the details of his contact with Maduro, and the preparedness of Ward. Furthermore, the court brought Maduro and his associate before the court in the afternoon to corroborate the information gathered in the morning." 894 F.2d at 497. In *Pierce* we said: "Furthermore, when presented with the motions, the court held hearings at which it questioned Growe and Pierce at some length regarding the nature of their problems with each other. We have read the transcripts of these hearings and find the court's inquiries to have been more than

---

**6.** The government, building on the dearth of information about the asserted disagreements between Prochilo and his appointed counsel, argues that it "would appear, then, that the claimed differences ... were more illusory than real. It is fair to infer, in light of the record as a whole, that the allegation of conflict was made in a calculated effort to justify a belated request for a substitution of counsel. The district court apparently recognized it as such. Thus, although it would unquestionably have been preferable for the court to have made direct inquiry about the matter, the court should not be faulted for divining the reality without the benefit of a hearing." While we have found some ground for criticizing the rhetoric Wilson chose to employ

(*see, e.g.,* note 2, *supra*), we think it something of a stretch for the government blandly to charge Wilson—and perhaps Prochilo as well—with disingenuousness ("It is fair to infer ... that the allegation of conflict was made in a calculated effort to justify a belated request for a substitution of counsel"). Moreover, we think there is a certain measure of chutzpah involved in the government's attribution to the district court of probable concurrence in the diagnosis of disingenuousness ("The district court apparently recognized it as such"), given that the district court, in ruling on Wilson's twin motions, did not purport to announce any findings of fact or conclusions of law with respect to the substance of Wilson's submissions.

# 228

adequate. If there is a relative lack of specificity regarding the reasons for the difficulties between Growe and Pierce, it is a result of a lack of elaboration on their part. It certainly is not a result of insufficient questioning by the court." 60 F.3d at 891. In each of these cases the district court, in conformity with *Allen,* "inquire[d] into the reasons for the dissatisfaction," 789 F.2d at 92. In the case at bar, no such inquiry was conducted. In consequence, we have no information about whether there were in fact "significant differences" between Prochilo and McGinty—or about the nature, scope and intensity of such differences if they did exist. Lacking such information, we are in no position to assess the government's contention that Prochilo suffered no prejudice by virtue of being represented at trial by McGinty rather than by Wilson. We have no reason to doubt that, following the approach he regarded as sound, McGinty conducted Prochilo's defense with skill. But, for lack of inquiry and findings by the district court, we have no basis for estimating whether representation by Wilson might, or might not, have markedly strengthened Prochilo's defense.[7]

## III.

In 1791, only two years after the Articles of Confederation gave way to the Constitution, that newly-minted charter was amended to add a Bill of Rights. The Sixth of the amendments set forth numerous guarantees of fairness in the administration of the criminal laws. One of these guarantees was that, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." In this century, commencing with the Supreme Court's landmark decision in *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), federal courts, pursuant to the Sixth Amendment, and state courts, pursuant to the Fourteenth Amendment's incorporation of this aspect of the Sixth Amendment, have wrestled with the problem of insuring that competent counsel are appointed, at public expense, to represent those accused of crime who cannot afford to retain private counsel. *See Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *see generally Anthony Lewis, Gideon's Trumpet* (1964).

A further problem—that of how to address the issues posed by an accused's dissatisfaction with appointed counsel—was the subject of this court's decision in *Allen.* We adopted a regime through which a trial court could determine, and this appellate court could review, whether it was incumbent on the trial court to

7. Prochilo's brief states: "Counsel has been unable to locate a single case where this court has affirmed the denial of a defendant's request for a continuance to allow substitute counsel to prepare for trial, or a direct request to substitute counsel, where there was not some form of hearing." Responding to that observation, the government's brief "notes that in at least one First Circuit case it does not appear from the Court's opinion that the district court held a hearing prior to denying the defendant's continuance motion. *See United States v. Neal,* 36 F.3d at 1205." *Neal* involved three appellants. The appellant who had unsuccessfully moved in the district court for a continuance in order to facilitate representation by retained counsel (in *Neal,* as in the case at bar, retained counsel was Barry Wilson) was Charles T. Flynn. It appears from the government's consolidated brief in *Neal* that the district court did hold a hearing. On pages 62–63 of the brief, the following appears: "On October 5, 1992, the scheduled day of jury selection, the defendant's retained counsel unsuccessfully argued to the court, for the first time, that it reconsider the September 25th motion for a continuance on the basis that defendant's court-appointed attorney was unprepared and, additionally, had conflict of interest. [Tr. 10 5 92 at 3–19. *See also* Doc. No. 191]." *And see,* at pages 65–66 of the government's brief: "Counsel claimed that because the court-appointed attorney had run for district attorney, he had an impermissible conflict of interest. [Tr. 10 5 92 at 4–6]. The trial judge, after inquiring into the Appellant's complaint, rejected it as groundless, '[i]f he had been elected, he wouldn't have taken office until after the first of the year. . . .' "

authorize the replacement of appointed counsel. Key to the *Allen* regime was the pronouncement that "[w]here the accused voices objections to appointed counsel, the trial court should inquire into the reasons for the dissatisfaction." 789 F.2d at 92.

In the case at bar the trial court, in an abuse of its discretion, denied the motions for continuance and for reconsideration without making inquiry into the accused's concerns,[8] with the result that the accused was required to go to trial represented by appointed counsel rather than counsel of his choice. Because no inquiry was made, this court has no basis in the record for sustaining the trial court's rulings. Accordingly, we are constrained by the Sixth Amendment to direct that Prochilo's conviction be set aside and that this case be remanded to the district court for further proceedings.

8. Although (1) *Allen* states that "[w]here the accused voices objections to appointed counsel, the trial court should inquire into the reasons for the dissatisfaction," 789 F.2d at 92, and (2) subsequent cases have reiterated that teaching, nothing in the *Allen* line of cases dictates that the inquiry must always be a formal in-court hearing. Sometimes a formal hearing may be seen as necessary; but it would seem that frequently a chambers conference, or even a telephone conference, would suffice, provided that the conference is on the record. Indeed, we can envision situations in which the requisite inquiry involves no interactive hearing at all, but is accomplished on the papers (by, for example, the submission of affidavits).