**Ronald JOHNSON, Petitioner,**

v.

**Paul E. NORTON, Superintendent, Respondent.**

No. CIV.A. 99–11249–DPW.

United States District Court, D. Massachusetts.

July 7, 2000.

Edward B. Gaffney, Law Office of Edward B. Gaffney, Wayland, MA, for Petitioner.

Catherine E. Sullivan, Assistant Attorney General, Criminal Bureau, Boston, MA, for Respondent.

### MEMORANDUM AND ORDER

WOODLOCK, District Judge.

The state court trial of the petitioner in this habeas corpus proceeding was suspended on its first day after jury selection following a report from a nurse in the court's lockup that the petitioner had "passed out twice and he's vomiting and ... I think he ... might have a concussion and he should be checked out." (Tr. I:28.) The following day, relying upon a report made to him by a court officer—outside the presence of the parties—concerning a conversation with a nurse at the House of Correction who said petitioner was now "cleared medically," the trial judge, without holding a competency hearing, denied a motion for a mistrial and forged ahead with the proceedings. (Tr. II:39–40.)

I find that the failure to hold a timely competency hearing under these circumstances involved an unreasonable application, on an unreasonable factual basis, of clearly established Supreme Court precedent governing the due process rights of a defendant where there is a bona fide doubt about his competence during trial. Conse-

quently, I will grant the writ of habeas corpus.

## I. BACKGROUND

The petitioner challenges on two bases his conviction of criminal charges arising out of a 1995 drive-by-shooting. First, he alleges that the trial judge's disposition without a full hearing of questions concerning his competency to stand trial was violative of the federal constitution. Second, he alleges that he was entitled to a new trial because the prosecution's knowing presentation of false testimony regarding nondisclosed information about proffer letters and cooperation agreements made to a key witness was a violation of his federal constitutional rights.[1]

The Massachusetts Appeals Court rejected these contentions and affirmed the conviction. *Commonwealth v. Johnson*, 44 Mass.App.Ct. 1125, 694 N.E.2d 55 (1998) (table). With respect to competency, the Appeals Court held that given the trial judge's findings relative to observations of the defendant during trial, it was not error to proceed without an evidentiary hearing. (Respondent's Supplemental Materials,

Ex. 4; *Commonwealth v. Johnson*, No. 97–P–1450, 44 Mass.App.Ct. 1125, 694 N.E.2d 55 (May 5, 1998)).[2] The Supreme Judicial Court denied petitioner's request for further appellate review. *Commonwealth v. Johnson*, 427 Mass. 1108, 700 N.E.2d 268 (1998).

## II. FRAMEWORK FOR REVIEW

When a petitioner has exhausted all state court remedies, a federal court may grant a writ only where the state court's adjudication on the merits:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Application of the first paragraph of § 2254(d) involves a two-step analysis of the state court decision:

---

1. Because I am granting the petition on competency grounds, it is not necessary for me to determine the merits of the nondisclosure grounds raised by petitioner. The disclosure has now been made and will be available for such use as seems appropriate at any new trial. I only note my view that the nondisclosure does not appear to have involved material information nor did it foster perjury.

The allegation of material differences in the benefits offered to Bonatos in the prosecution of the initial defendant Cruz and the prosecution of petitioner Johnson is not supported by a review of the proffer letters and cooperation agreements supplied by the government in its opposition memorandum. While the withholding of these letters in connection with the prosecution of Cruz and the representation to Cruz's counsel that no such letters had been issued is troubling, the belated disclosure would appear to support Bonatos' testimony.

Thus, the premise of petitioner's argument— that the prosecution knowingly allowed Bonatos to testify falsely about the offers made to her—is undercut and Johnson's argument falls with the premise.

To be sure, the prosecution appears to have failed to carry out its obligation to disclose requested information to Cruz's counsel. But this evidence was not exculpatory as to petitioner and the effect of its withholding was plainly inconsequential to the outcome of petitioner's trial.

2. With respect to the alleged presentation of false testimony regarding undisclosed information, the Appeals Court rejected the "argument that the judge had no basis to conclude that the defendant was aware of the nature of the cooperation agreement between the Commonwealth and the principal witness against him." *Id.* at 10.

First, the habeas court asks whether the Supreme Court has prescribed a rule that governs the petitioner's claim. If so, the habeas court gauges whether the state court decision is "contrary to" the governing rule. In the absence of a governing rule, the "contrary to" clause drops from the equation and the habeas court takes the second step. At this stage, the habeas court determines whether the state court's use of (or failure to use) existing law in deciding the petitioner's claim involved an "unreasonable application" of Supreme Court precedent.

*O'Brien v. Dubois*, 145 F.3d 16, 24 (1st Cir.1998); *see generally Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1518–23, 146 L.Ed.2d 389 (2000).

## III. THE COMPETENCY CLAIM

Johnson contends that he was convicted without a meaningful hearing on his competency to stand trial. Shortly before his trial started, he apparently suffered a head injury in a pretrial jail altercation. (Tr. I:4.) As the trial judge observed at the end of the first trial day, "[h]e bashed his head on, on route this morning, I mean he's got some physical corroboration." (Tr. I:30). The petitioner was nevertheless brought to court and jury selection began. At the outset of proceedings that day, he stated that he "didn't really know what was going on." (Tr. I:4.) After the jury was impaneled and sworn, Johnson collapsed in the courtroom. (Tr. I:27; Tr. II:38.) He was taken to a holding cell where he fainted twice and vomited. (Tr. I:28.) The examining nurse's preliminary diagnosis was that Johnson had a concussion and should be x-rayed and seen by a physician. (Tr. I:28–29.) The nurse also reported that he did not seem to remember what had happened and that he also reported passing out earlier that morning. (Tr. I:28.) Trial proceedings were suspended for the day. Johnson

was taken to the prison infirmary where he was apparently examined by the nurse on duty, but was never seen by a doctor. (Tr. II:39.)

Before the start of the second day of trial, after meeting with Johnson, defense counsel asserted that "there's a question as to his competency and to his mental capacity" and moved for a mistrial. (Tr. II:39.) The trial judge denied the motion on the basis that outside the presence of the parties and apparently without notice to them "I've had the Court Officer call first thing this morning and speak directly to the nurse at [Essex House of Corrections] Middleton. And she informed him that he was medically cleared." (Tr. II:39–40.) At the end of trial that day, the trial judge *sua sponte* made findings based solely on his observations from the bench without any specific hearing "that the defendant has been quite able to assist his counsel in conducting the trial here today." (Tr. II:266.) He made no timely findings with respect to petitioner's competence during jury selection the previous day when trial was suspended as a result of complications from a traumatic head injury.

In Findings and Rulings regarding a new trial motion issued over a year later, the trial judge did, however, find that "[t]he defendant was in the courtroom at all times during the selection of the jury and counsel did continuously engage in discussion with the defendant during that process." (Respondent's Supplemental Materials Ex. 1 (Record Appendix at 42)) (June 19, 1997 Findings and Conclusions at 4.)

The Appeals Court found that the trial judge had an opportunity to observe the defendant and discuss aspects of the case with him at a pretrial hearing the day before his injury, as well as after his

injury and during jury empanelment on the first day of trial, and thus could have compared the defendant's demeanor and response before and after the injury. The judge also had an opportunity to observe the defendant before the start of trial the second day. Given these observations and presented with no more than trial counsel's representations, it was not error for the judge to proceed with the trial ... The judge did not err in proceeding without an evidentiary hearing.

(Respondent's Supplemental Materials: *Commonwealth v. Johnson,* No. 97–P–1450, 44 Mass.App.Ct. 1125, 694 N.E.2d 55 (May 5, 1998); Ex. 4, slip op. at 5).

## A. The Failure to Hold a Competency Hearing Contemporaneously with Jury Selection

 The conviction of an accused person legally incompetent during trial violates due process. *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Therefore, courts must determine whether a criminal defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), quoting *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but ... even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invari-

ably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.

*Drope,* 420 U.S. at 180, 95 S.Ct. 896. A court must, however, undertake a competency hearing whenever the evidence presents a bona fide doubt as to defendant's competence. *Pate,* 383 U.S. at 384–86, 86 S.Ct. 836. *See, e.g., Mata v. Johnson,* 210 F.3d 324, 329 (5th Cir.2000) ("state court must conduct an inquiry into the defendant's mental capacity *sua sponte* if the evidence raises a bona fide doubt as to competency"); *Eddmonds v. Peters,* 93 F.3d 1307, 1316 (7th Cir.1996) ("where trial judge has 'substantial reason to doubt the defendant's fitness' due process obligates the trial judge *sua sponte* to order a competency hearing"); *James v. Singletary,* 957 F.2d 1562, 1570 (11th Cir.1992) (interpreting *Pate* to hold that due process requires trial judge to conduct *sua sponte* a competency hearing "in the face of information raising a bona fide doubt regarding [defendant's] competency to stand trial").

The Supreme Court having established a rule to determine when a hearing should be held on the question whether a criminal defendant is competent to stand trial, I must evaluate whether the state courts' decision not to require conduct of a timely hearing on Johnson's competence was an objectively unreasonable application of that rule as to the law or the facts. *Williams v. Taylor,* 120 S.Ct. at 1521.

 The trial judge had some evidence from which he could arguably conclude that Johnson had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding on the second day of trial. As observed and

reported by the trial judge,[3] albeit without any hearing, Johnson did not exhibit the continuation of any of the outward indicia of serious mental incompetency of the type found in *Pate* and *Drope*. But those observations did not begin to address the serious medical issue manifest to the trial judge on the first day of trial. That medical issue plainly raised a "bona fide doubt" as to Johnson's fitness to assist counsel in jury selection and required further inquiry by the trial judge.

 The right of a defendant to have a meaningful presence during jury selection is firmly embedded in the federal constitution. An accused has the right to be present at his own trial, including the impaneling of the jury. *See, e.g., Tankleff v. Senkowski*, 135 F.3d 235, 246 (2d Cir. 1998); *United States v. Camacho*, 955 F.2d 950, 952 (4th Cir.1992); *United States v. Gordon*, 829 F.2d 119, 123 (D.C.Cir.1987). This right would be hollow indeed were the defendant incompetent to assist his counsel in the exercise of rights to challenge members of the venire. Here, the transcribed record regarding petitioner's participation in jury selection is at best somewhat muddled. In a brief exchange with the court shortly before he passed out, Johnson was informed of his right to two peremptory challenges. His reply was not altogether responsive. (Tr. I:24.) Whether this exchange itself was reflective

of Johnson's incompetency cannot readily be ascertained because no contemporaneous inquiry into his competence was made. In any event, the record is devoid of any indication that the defendant exercised peremptory challenges, although the transcribed record may not be complete. (*See generally*, 5–13–97 Motion Tr. at I:32–41 (noting conflicting recollections regarding challenge process)).

At the time of Johnson's collapse during the first day of trial, the trial judge was aware of the head injury Johnson had suffered. (*Tr.* I:4) He was informed of subsequent fainting and vomiting when Johnson was taken to the holding cell. (*Id.* I:28.) The trial judge was also informed of the examining nurse's preliminary diagnosis of a concussion and the need for x-rays and attention by a physician. (*Id.*) In sum, a substantial body of evidence on the first day of trial cast doubt on Johnson's ability to understand the proceedings against him. It was constitutional error not to hold a meaningful hearing either that day or the following day on the question of Johnson's competence during the first day of trial before proceeding further. Reliance upon the hearsay report of a court officer's telephone conversation with a nurse regarding his purported condition the next day and, *sua sponte* observations regarding demeanor were no substitute for developing a sufficient basis for

---

**3.** After the jury was excused for the day, the court *sua sponte* observed:

> In light of the issue that was raised this morning, I'm now having witnessed the entire day's proceedings, I just want to make some findings for the record, in light of the statement this morning that Mr. Johnson was not competent to continue with the trial today because of his injury. I just want to state for the record that Mr. Johnson has been extremely alert all day. He has been writing notes to his Counsel. He has been extremely involved and focused on

the trial. Raising questions, asking his Counsel both verbally and in writing to ask certain questions. Raising his hand on numerous occasions which I have no problem with. I commend him for doing it and I think he's done an excellent job. But there's no question in my mind as a matter of fact that the Defendant has been quite able to assist his lawyer in conducting the trial here today and in fact on more than numerous occasions, directed his lawyer to ask certain questions, both in writing and verbally.

(Tr. II:265–66.)

decision through a hearing. *Cf. Pate v. Robinson,* 383 U.S. at 385, 86 S.Ct. 836 ("While Robinson's demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue.")

▮ I recognize, of course, that the petitioner's renewed efforts to obtain a continuance on the first day of trial—after it had been rejected by a Single Justice of the SJC—may have colored the trial judge's attitude toward other circumstances which could derail conducting trial on the court's schedule.[4] But, as Chief Justice Burger observed for a unanimous court in *Drope,* "[t]hat this might have aborted the trial is a hard reality but one that could have been avoided by prompt" development of a meaningful evidentiary record to support a competency determination. *Id.* at 181–82, 95 S.Ct. 896. No such evidentiary basis was developed here, indeed any competency finding which might be deemed relevant to the first day would be entirely devoid of record support because no hearing as to that time period was ever held in this case.

Accordingly, Johnson's petition should be granted pursuant to 28 U.S.C. § 2254(d)(1) because he was deprived, by unreasonable application of the United States Supreme Court's clearly established precedent in the state courts, of due process in the timely determination of his competence.

## B. The Failure of Post–Hoc Fact–Finding Regarding Competency

▮ As an alternative ground for granting the writ I find the *post hoc* fact-

finding regarding the defendant's competence during jury selection unreasonable within the meaning of 28 U.S.C. § 2254(d)(2). I must, of course, view with deference the trial judge's observations on the second trial day, upon which the state Appeals Court in part relied. I accord that deference with reservations, however, because demeanor observations cannot, as *Robinson v. Tate* teaches, be relied upon to dispense with a hearing. Although statements made directly to the court may provide a basis for an adequate demeanor based competency finding, in the absence of a hearing it is impossible to say, for example, just how competent and lucid the petitioner's observed but unexamined writings to his counsel were.

▮ But even assuming that the trial judge's surface observations at the end of the second day were compelling and worthy of reliance—if on no other basis than the deference a federal habeas court must show state court fact-findings—the fact that Johnson appeared to regain competency for the remainder of the trial is insufficient to overcome the plain due process violation arising earlier. As I conclude in Section III.A. *supra,* the evidence of the first day constitutionally warranted a timely inquiry into Johnson's competence during that period. Due process mandates competency throughout a trial, not just parts of it. A trial court must always be alert to circumstances suggesting changes in the ability of the accused to meet the standards of competence to stand trial. *Cf. Drope v. Missouri,* 420 U.S. at 181, 95 S.Ct. 896. Here, however, the record is

---

4. I note that, although not raised by petitioner, the trial judge's peremptory treatment of the new counsel grounds for the continuance, also without meaningful inquiry, would not pass muster under First Circuit law governing the obligations of federal trial judges to make

such an inquiry. *United States v. Prochilo,* 187 F.3d 221 (1st Cir.1999). Of course, state and federal judges will not necessarily be obligated to employ the same procedures in the absence of a constitutional imperative.

devoid of any reliance or meaningful evidence regarding the circumstances during jury selection.

The *post hoc* fact-finding procedures in the state courts did not cure the failure to conduct a contemporaneous competency hearing related to jury selection. Rather, they represented an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). Most fundamentally, the findings do not address the nature and quality of the discussions in which the petitioner and his counsel were observed engaging. Indeed, the trial judge dismissed as "not really competent" the only direct evidence of the character and substance of those conversations, the affidavit of counsel concerning his communications with the petitioner during voir dire. (*Id.* at 4 n. 2.) In rejecting this direct evidence on the erroneous grounds of evidentiary "competence", the trial judge treated the affidavits of counsel and the defendant in connection with a new trial as a recent contrivance, contending that the petitioner's competence in jury selection was not raised at the time. This is unsupported reconstruction. The issue was so plain on the record after the petitioner's collapse that the trial judge instructed counsel

> [t]his is obvious, if nothing else number one, you would, I want you to speak to your client about what to do. Number one, it would seem to me that if your client needs hospitalization, you have an obligation to request a mistrial. Secondly, the thing that I can do is put it over until tomorrow morning, just excuse the jury until tomorrow morning and find out whether he's capable of going forward or not.

(Tr. I:28). And yet, when a motion for mistrial was requested at the start of trial the next day it was summarily denied. It is hardly fair under the circumstances to place responsibility on counsel's shoulders for the fact that peremptory proceedings did not permit full articulation of the grounds for mistrial, which were in any event evident—or in the trial judge's contemporaneous view "obvious." In his findings and conclusions regarding the new trial motion, the trial judge inaccurately reported that "The Court made several findings at the end of the evidence that the defendant was alert and communicative *throughout the trial* ...." (Findings and Conclusions at 4 (emphasis supplied).) *Compare* Tr. II:266 ("the Defendant has been quite able to assist his lawyer in conducting *the trial here today*") (emphasis supplied).

In point of fact, no purported findings regarding the competence of petitioner during jury selection were made until the motion for new trial stage almost a year later, when the trial judge asserted that "the conversations between defense counsel and the defendant during the jury selection process stand markedly in contrast to an affidavit that appeared after the hearing on the motion for a new trial." (Findings and Conclusions at 4 n.2.) The filing of trial counsel's affidavit, by separate counsel who represented petitioner on the new trial motion, was in direct response to an inquiry from the trial judge asking, "Do you have an affidavit from Mr. Kenneally saying he never explained these things?" (5/13/97 Tr. I:34). And it is unclear how a court which thereafter ruled such an affidavit "not really competent" could meaningfully "contrast" observations of "conversations," even animated conversations, whose substance was unheard and privileged, with affidavit evidence regarding those conversations.

▮ The speculative suggestion of the Appeals Court that the trial "judge had an opportunity to observe the defendant and discuss aspects of the case with him at a

pretrial hearing the day before his injury, as well as after his injury and during jury impanelment on the first day of trial, and thus *could* have compared the defendant's demeanor and responses before and after the injury," slip op. at 5 (emphasis supplied), was not reflected as a basis for the trial judge's Findings and Conclusions. More materially, the Appeals Court's assertion that "[n]o evidence of impairment was offered in connection with the motion for a new trial," *id.*, was clearly erroneous. The trial record itself, when coupled with the Affidavit of petitioner, (Respondent's Supplemental Materials Ex. 1 (Record Appendix at 2)), concerning the jury selection and his understandings and communications with counsel and the Affidavit of trial counsel asserting that on "the day the jury was selected, [the petitioner] was not competent to assist in the jury selection process [, an] observation ... based on my conversations and observations of Mr. Johnson during the trial," (*id.* at 26), were plainly part of the evidence before the trial judge when he acted on the motion for a new trial.

The fact-finding undertaken in the state courts serves to underscore the importance of a timely hearing when a question of competence arises during a criminal proceeding. The evidence of record clearly and convincingly establishes no fact-finding meaningfully directed to competence during jury selection on the first day of trial. Rather the trial court reconstructed its proceedings a year later with an erroneous recollection of findings that were never made and the Appeals Court affirmed on the basis of findings that "*could*" have been made but were not.

## IV. REMEDY

I have given consideration to issuing a conditional writ ordering a *nunc pro tunc* evidentiary hearing for the purpose

of determining retrospectively the petitioner's competency during the first day of trial. *See generally, Carter v. Johnson,* 131 F.3d 452, 459 n. 10 (5th Cir.1997). Given the passage of time and the inadequacies of the findings in connection with the new trial motion—which were themselves efforts at *nunc pro tunc* historical reconstruction, *see* Section III.B *supra*—there is no assurance of reliability in such an evidentiary proceeding as a meaningful method to determine at this point the competence of the petitioner during the first day of trial five years ago. In any event, the existing record of the first day of trial makes such a clear and convincing demonstration of actual incompetence during jury selection, as a result of a recent traumatic head injury, that the belated conduct of an evidentiary hearing is unnecessary. Because the state court decisions to let stand a conviction in which there was a substantial question regarding the competence of the defendant to participate in the trial were "so offensive to longstanding Supreme Court precedent and so devoid of record support," *O'Brien v. Dubois,* 145 F.3d at 25, I find it necessary to issue a conditional writ requiring a new trial.

## V. CONCLUSION

For the reasons set forth more fully above, the writ of habeas corpus shall issue unless, within 90 days from the date of this order, the respondent has reinstituted proceedings to retry the petitioner. Pending such further proceedings, the petitioner shall not be enlarged on bail, unless otherwise ordered by some court having competent jurisdiction over this matter.