# United States Court of Appeals
## For the First Circuit

No. 12-2424

UNITED STATES,

Appellee,

v.

FERNANDO DÍAZ-RODRÍGUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Thompson, Lipez, and Kayatta,

Circuit Judges.

Rafael F. Castro Lang for appellant.

Justin Reid Martin, with whom Rosa Emilia Rodriguez-Velez, Nelson Pérez-Sosa, and John A. Mathews II were on brief, for appellee.

March 17, 2014

**LIPEZ, Circuit Judge**. Appellant Fernando Díaz-Rodríguez, convicted at trial of one count of aiding and abetting interference with commerce by threats of violence and one count of using a firearm during the commission of a crime of violence, argues on appeal that the district court abused its discretion when it did not allow his counsel to withdraw, and further argues that this decision resulted in a denial of the effective assistance of trial counsel, all in violation of the Sixth Amendment. Díaz-Rodríguez also argues that his sentence of 360 months imprisonment was procedurally and substantively unreasonable.

We conclude that the district court violated Díaz-Rodríguez's Sixth Amendment right to counsel when it forbade him from retaining new counsel without conducting any inquiry into his conflict with present counsel. Accordingly, we vacate the conviction. We need not reach the ineffective assistance or sentencing issues.

## I.

The crime in this case was vicious.[1] Díaz-Rodríguez was one of four individuals charged with the armed robbery of an armored truck in September 2010. His compatriots fired multiple gunshots during the course of the robbery, seriously wounding an armed guard and, inadvertently, Díaz-Rodríguez, whose injuries

---

[1] The facts of the crime are reported in the light most favorable to the jury's verdict.

required medical treatment.  One of Díaz-Rodríguez's compatriots likely would have killed the armed guard if his firearm had not malfunctioned.

Díaz-Rodríguez was arrested and indicted shortly after the robbery, and his trial was scheduled to begin on May 3, 2011. In April, the government learned that Díaz-Rodríguez was having difficulties with his counsel, Carlos Noriega, and consequently might be seeking substitute counsel.[2]  Fearful that such a change in representation would delay the trial,[3] the government filed a motion on April 14 informing the court of the possibility that Díaz-Rodríguez might retain new counsel and requesting an order establishing a deadline for doing so or, in the alternative, a Pretrial Conference with the defendant present to discuss the matter.  On April 15, before Díaz-Rodríguez could respond to the government's motion, the district court entered a summary electronic order decreeing that "[a]t this late date defendant will not be allowed to retain new counsel."

---

[2] Attorney Noriega was initially retained by Díaz-Rodríguez. When a plea agreement could not be reached, it became clear that Díaz-Rodríguez could not afford to pay Noriega for his continued representation.  Accordingly, on the first day of trial, April 16, 2012, Noriega filed, and the court granted, a motion to be appointed counsel under the Criminal Justice Act (CJA), 18 U.S.C. § 3006A.

[3] The government was concerned with maintaining the established schedule due to the need to make travel arrangements for an expert witness.

Subsequently, as Díaz-Rodríguez's medical condition from his gunshot wound worsened, he had to undergo numerous surgeries, and the trial was repeatedly continued to an April 16, 2012 start date. On March 31, 2012, Attorney Noriega filed a motion to withdraw, citing "irreconcilable differences that prevent [him] to further assist the defendant as counsel in this case." He also noted that "the essential aspect of the attorney-client relationship must rest in the trust the defendant has on his attorney. It is destroyed when the client places his trust on another source." The government responded later that same day, arguing that the motion was untimely. On April 2, the district court summarily denied the motion by electronic order.

On April 12, Attorney Noriega filed a motion for a continuance that again mentioned the breakdown in the attorney-client relationship. On April 13, following the government's response, the district court denied the motion for a continuance calling it an "untimely and speculative request." On April 15, Noriega filed a supplemental motion requesting reconsideration of his motion for continuation of trial. Among other things, the motion reasserted the breakdown in his relationship with Díaz-Rodríguez:

> In relation to the Attorney-client relationship I have stated that it has been affected. . . . [The] Six [sic] Amendment right is unique and profound in its meaning. It relies in [sic] the one and only element. It depends on: TRUST. A defendant must trust

-4-

> his attorney. And when that requirement is
> affected the Attorney client privileges [sic]
> disappear for good.

On April 16, the district court noted the motion and ordered that trial nonetheless continue as scheduled.

The jury trial was conducted from April 16 to April 18. The government introduced physical evidence, including DNA, and called multiple witnesses, including a DNA expert. Attorney Noriega chose to rely solely on the cross-examination of government witnesses and introduced no evidence. The jury found Díaz-Rodríguez guilty of both charges.

The district court sentenced Díaz-Rodríguez to 240 months on the robbery count and 120 months on the firearm count, to be served consecutively. This appeal followed.

**II.**

Díaz-Rodríguez argues that the district court's refusal to allow him to retain new counsel violated his Sixth Amendment right to counsel of choice because the court initially forbade him from hiring substitute counsel without giving him an opportunity to be heard on the issue. He further asserts that Noriega was operating under a conflict of interest due to the loss of trust in their relationship.

The Sixth Amendment guarantees criminal defendants the right to counsel. An "essential component of that right is the accused's opportunity to obtain counsel of his own choice." United

States v. Panzardi Alvarez, 816 F.2d 813, 815 (1st Cir. 1987) (citing Powell v. Alabama, 287 U.S. 45 (1932)).  However, a defendant's right to his choice of counsel is not absolute; there are limits to the time and manner of its exercise.  See United States v. Richardson, 894 F.2d 492, 496 (1st Cir. 1990).  A defendant cannot exercise this right in a manner that will "unduly hinder the fair, efficient and orderly administration of justice." Panzardi Alvarez, 816 F.2d at 816; see also United States v. Poulack, 556 F.2d 83, 86 (1st Cir. 1977) ("[T]he right of an accused to choose his own counsel cannot be insisted upon in a manner that will obstruct reasonable and orderly court procedure.").  Thus, when a defendant seeks to substitute counsel as trial is approaching, the court must balance his "interest in retaining counsel of his choice against the public's interest in the prompt, fair and ethical administration of justice."  United States v. Woodard, 291 F.3d 95, 106 (1st Cir. 2002) (internal quotation marks omitted).

We review a trial court's decision on a defendant's request to substitute counsel for abuse of discretion.[4]  Woodard,

_____

[4] Cases in this area of the law describe motions bearing different labels.  If a motion is filed by the defendant directly, it is often called a motion for substitution of counsel.  If a motion is filed by the attorney, it is often called a motion to withdraw.  In some cases these are companion motions, with the shared objective of replacing one attorney with another.  These motions frequently detail conflicts between the attorneys and the clients that threaten a breakdown in the attorney-client relationship.

291 F.3d at 106. However, we have also held that the trial court must conduct an appropriate inquiry into the source of the defendant's dissatisfaction with his counsel. United States v. Prochilo, 187 F.3d 221, 228-29 (1st Cir. 1999); see also United States v. Allen, 789 F.2d 90, 92 (1st Cir. 1986) ("Where the accused voices objections to appointed counsel, the trial court should inquire into the reasons for the dissatisfaction.").[5] Although we have held that "there is no invariable model for a trial court's inquiry into an allegedly embattled attorney-client relationship," we have consistently required some "probe into the nature and duration of the asserted conflict." United States v. Myers, 294 F.3d 203, 207 (1st Cir. 2002); see also Woodard, 291 F.3d at 107 (noting that "[t]he extent and nature of the inquiry may vary in each case; it need not amount to a formal hearing"); Prochilo, 187 F.3d at 229 n.8 (noting that, at times, "a chambers conference," "a telephone conference," or even simply "the submission of affidavits" might suffice).

These duty to inquire cases primarily dealt with motions concerning appointed counsel, whereas here Noriega was still

---

[5] In Allen, we set forth the several factors that we must examine when reviewing a district court's decision on a motion for substitution or withdrawal: "the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense." 789 F.2d at 92.

retained counsel at the time the motions at issue were filed.[6] Nonetheless, in Woodard, a Sixth Amendment right to counsel case involving retained counsel, we drew on Allen, one of our court-appointed counsel precedents, for the proposition that "[w]hen a defendant voices objections to counsel, the trial court should 'inquire into the reasons for the dissatisfaction.'" Woodard, 291 F.3d at 107 (citing Allen, 789 F.2d at 92). Although the Woodard panel expressed "some question about the applicability of the Allen factors to [motions concerning retained counsel]," see supra note 5, it expressed no reservation about the duty of the court to inquire about the nature of the attorney-client conflict when faced with a motion seeking substitution of retained counsel. Hence, this duty to inquire applies with equal force whether the counsel at issue is appointed or retained.[7]

---

[6] As noted above, Noriega became appointed counsel on the first day of trial, April 16, 2012, after he filed a motion so requesting.

[7] In expressing its reservation about the applicability of the Allen factors to a motion concerning retained counsel, the Woodard panel suggested that a defendant filing a motion for substitution of retained counsel could "simply fire[] [his counsel] and retain[] a different lawyer before trial was scheduled . . . [in order to] present[] the trial court faced with a motion by counsel to withdraw with a more palatable alternative." 291 F.3d at 107. The panel also noted that "[u]nlike a defendant with appointed counsel, [the defendant] was not dependent on the court's permission to replace [her attorney]." Id.
    Although this does not appear to be a case in which Díaz-Rodríguez actually attempted to substitute another retained counsel for Noriega, we note, for the sake of clarity in the future, that this dictum from Woodard about the freedom of a defendant with retained counsel to replace counsel without the court's permission

The situation presented here is unusual in that the possibility of substituting defense counsel was first brought to the court's attention by the government's motion of April 14, 2011. The court then ruled on that motion the day after it was filed without giving Díaz-Rodríguez an opportunity to respond either by written submission or court appearance.  Although we acknowledge the heavy demands of the district court's docket in Puerto Rico, the court's failure to inquire in any fashion about the alleged breakdown in the attorney-client relationship is incompatible with the precedent already noted requiring such inquiry.  It is telling that the government's motion did not even seek the relief the court summarily granted -- an order forbidding Díaz-Rodríguez from

is problematic.  Even if a defendant with retained counsel were to take the course we suggested in Woodard and "simply fire[] [his counsel] and retain[] a different lawyer," 291 F.3d at 107, the fired attorney would still have to file a motion to withdraw pursuant to the local rules of the jurisdiction in which the matter was pending.  See United States v. Gaffney, 469 F.3d 211, 216 (1st Cir. 2006) (explaining that "[i]n conjunction with filing a motion for substitution of counsel, [the defendant] would have to fire his present attorney, hire a new one, and cause his former attorney to move to withdraw").

This continuing involvement of the court is necessary because, even in the privately retained attorney scenario, the decision to fire counsel, particularly on the eve of trial, affects the interests of the government in preparing for trial and the court in the administration of justice.  There is always the possibility that such firings could be delay tactics by the defendant.  Still, we agree with the Woodard panel that the factors relevant to the court's inquiry into an attorney-client conflict, and its ruling on that conflict, may differ from those articulated in Allen when dealing with a motion by retained counsel.  Here, because no inquiry at all was conducted, we need not decide how the relevant factors may differ.  It is enough to rely on the requirement that some inquiry must be made.

retaining new counsel -- but instead sought only a deadline for retaining new counsel or a hearing on the matter.

To be sure, the court's initial order of April 15, 2011, forbidding Díaz-Rodríguez from retaining new counsel "[a]t this late date," reflected a legitimate concern about the temporal relationship between his possible desire (attributed to him by the government) to substitute counsel and a long-scheduled trial date. We have held that "as trial approaches, the balance of considerations shifts ever more toward maintaining existing counsel and the trial schedule." United States v. Teemer, 394 F.3d 59, 67 (1st Cir. 2005). Here, however, the court did not conduct any such balancing because the court heard only the government's version of Díaz-Rodríguez's problems with his attorney, and conducted no inquiry into the nature of those problems. As we held in Prochilo, "[b]ecause no inquiry was made, [we] [have] no basis in the record for sustaining the trial court's rulings." 187 F.3d at 229. Accordingly, regardless of the time pressures on the district court, its decision to forego any response from Díaz-Rodríguez and any inquiry into his relationship with his attorney before entering its April 15 order was incompatible with Díaz-Rodríguez's Sixth Amendment right to counsel.

There were subsequent events, however, that we must factor into our final decision on the Sixth Amendment issue. The subject of Díaz-Rodríguez's representation reemerged almost a year

-10-

later, in late March and early April 2012, again just a few weeks before the trial, which had been delayed due to Díaz-Rodríguez's medical treatment. Attorney Noriega's motion to withdraw and motion for a continuance provided the district court with some information on the nature and extent of the breakdown in the attorney-client relationship. This is the type of information that Díaz-Rodríguez was not given the opportunity to provide when the court first dealt with the issue in 2011 and forbade any retention of new counsel. The district court again summarily denied the motions, saying only that the request for a continuance was an "untimely and speculative request."

Although there is no requirement that the court always say more in denying such motions, the circumstances here required the court to say more. The basis for the 2012 withdrawal and continuance motions was an alleged breakdown in the attorney-client relationship and the need for new counsel. In its order of April 15, 2011, entered without hearing from Díaz-Rodríguez in any form and without the inquiry required by the Sixth Amendment, the district court forbade Díaz-Rodríguez from retaining new counsel. We cannot tell from the record if the court denied the subsequent motions on the basis of the flawed April 15 order or whether, on the basis of the papers submitted to it by Noriega in March and April 2012, it belatedly made the inquiry, required by Prochilo, 187 F.3d at 228-29, into the breakdown of the attorney-client

-11-

relationship.  See also Myers, 294 F.3d at 207 (holding that the Sixth Amendment requires some "probe into the nature and duration of the asserted conflict").  Accordingly, given the inescapable uncertainty on this record of the district court's compliance with Díaz-Rodríguez's right to counsel, "we are constrained . . . to direct that [the] conviction be set aside and that this case be remanded to the district court for further proceedings." Prochilo, 187 F.3d at 229.[8]

### III.

For the foregoing reasons, the conviction and sentence are vacated.

**So Ordered.**

---

[8] In a three-line footnote on page 39 of its brief, the government implies that any error by the district court in its denial of the motions to withdraw and for a continuance was harmless.  Although Prochilo suggests that such a result is possible upon a finding that "[the defendant] suffered no prejudice by virtue of being represented at trial by [his original attorney] rather than [substitute counsel]," this argument is developed so perfunctorily here that we deem it waived.  187 F.3d at 228.